# Hemphill, et al. v. New York Life Insurance Company.

(Decided June 23, 1922.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Insurance—Mistake in Issuing Paid-Up Policy.—Where, through mistake, an insurance company issued a paid-up policy to one of its policyholders in lieu of a former policy on which several premiums had been paid, and in doing so estimated that the premiums paid by the insured entitle him to a paid-up policy of $1,269.00, when in fact and truth he was only entitled to a paid-up policy of $137.72, the mistake occurring by reason of the failure of the clerk in the office of the insurance company to deduct $642.00 borrowed on the policy by the insured from $779.72, the total reserve value of the policy, and both parties acknowledge that a mistake was made, it will be corrected and the parties restored to their original status upon it being shown to be a mutual mistake.

2. Insurance—Mistake in Issuing Paid-Up Policy.—When an insured applies to his company for a paid-up policy and asks for its usual terms, and the company through mistake wrote him a letter quot-

ing terms entirely contrary to the usual rules of the company, and in pursuance to said letter later issues a paid-up policy for several times the amount of insurance to which the insured was actually entitled and the insured, not konwing otherwise, accepts the policy as that to which he is actually entitled under the rules of the company, the mistake is mutual and may be corrected.

BURNETT, BATSON & CARY and ERNEST W. SPRAGEN for appellants.

BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The policy of life insurance, which is the basis of this controversy, was issued to appellant James C. Hemphill on November 3, 1894, insuring his life in the sum of $2,000.00, his daughter, Theo Hemphill, being the beneficiary. Hemphill was then thirty-seven years of age, and the annual premium on the policy was $61.80. Some of the premiums were paid as they came due. Later Hemphill obtained several loans on the policy from the company amounting to a total sum of $642.00, and this was an indebtedness against the lien upon the said policy. Hemphill was in straitened financial circumstances. A premium was due upon the policy on the 3rd of November, 1916. Previous to that date and on October 14th of that year, the insured wrote the company stating the fact he would be unable to continue the payment of the premiums on said policy and interest on said loans, and requested said plaintiff to advise him what would be the balance or withdrawal value of said policy after deducting said indebtedness thereon, and what amount the company would give him in paid-up insurance for said balance, and further requesting the company to send him the necessary forms to be signed if he accepted said settlement, and stated he desired to accept one of them before November 3rd, when the premium and interest became due. The reserve on the policy on November 3, 1916, computed, according to the American Experience Tables of Mortality, interest at the rate of three per cent. per annum, was the sum of $779.72, and after deducting therefrom said indebtedness of $642.00 which he had borrowed from the company, there remained the sum of $137.72, as the net cash surrender value of said policy. This sum taken as a single premium, at the then age of the insured according to the same tables of mortality,

and interest at the rate of 3½ per cent. per annum, would purchase paid-up insurance payable under the same conditions as provided in the policy but without premium returns, to the amount of $225.00. The total reserve of $779.72, as a calculated premium, would, at the age of Hemphill, have purchased paid-up insurance to the amount of $1,269.00. It appears that in making the calculations in the office of the company one of its clerks wrote the appellant that the company would cancel all his indebtedness to it and issue to him a paid-up policy of $1,269.00 on the surrender of his old policy and the cancellation of all reserve. This was error and came about through the clerk of the company finding that the total value of the policy at that time, November 3, 1916, was $779.72, and overlooking the indebtedness of Hemphill to the company of $642.00, which should have been deducted from the total value of the policy. If the clerk had not made this mistake but had subtracted the indebtedness of Hemphill from the value of the policy, there would have remained only $137.72 with which to purchase paid-up insurance, and this amount, according to accepted tables of mortality, would have purchased for Hemphill at that time a paid-up policy of $225.00 only instead of $1,269.00 as found through the mistake. When Hemphill received the letter from the company in answer to his inquiry as to what amount of paid-up insurance the company would issue him, he immediately accepted the proposition and sent his old policy in to be indorsed, showing the amount of paid-up insurance he was to have. When the old policy was received at the office of the company, in New York, it made the following indorsement on the second page thereof: "In accordance with the terms of the loan agreement of the 11th of October, 1915, and on account of default in the payment of November 3, 1916, premium and loan interest, this policy is continued as paid-up insurance for $1,269.00. New York, November 3, 1916. (Signed.)" After this indorsement was placed upon the policy giving to Hemphill paid-up insurance in the sum of $1,269.00, the policy was forthwith returned to Hemphill, in Kentucky, where he received it, and without any intention of doing any wrong and in ignorance of the mistake which had been made, accepted the policy and continued to hold it until in the early part of December, when the company for the first time discovered the mistake made by its clerk, and

forthwith called the attention of Hemphill to the same, and asked him to send in his policy so that it might be corrected in accordance with the facts and the right of the matter.   After several conferences Hemphill declined to surrender his policy or to allow the company to cancel the indorsement giving him $1,269.00 in paid-up insurance and to enter another indorsement thereon, but turned over his policy to his attorneys who represent him in this case, and this action was commenced by the insurance company against Hemphill and his wife, to whom the policy had been assigned, praying that said indorsement on said policy be reformed by substituting therein the figures $225.00 in the place and instead of the figures $1,269.00; or, if this could not be done, that said indorsement on said policy be cancelled and made void and of no effect, and said policy be restored to its status at the time the said indorsement was placed thereon and said loan of $642.00 be reinstated as a lien against said policy and said loan agreement under which said loan was made be restored to full force and effect, and thereupon that said defendant has lived to receive from plaintiff said cash surrender value of said policy amounting to $127.72, or to have said policy reinstated and restored to full force and effect upon the payment by Hemphill to said plaintiff, within such time as might be specified by the court, the delinquent premiums on said policy and interest on said loans with five per cent thereon from the due date thereof.   The prayer of the petition also contained a request that a temporary injunction be issued restraining and enjoining the defendants, Hemphills, from selling, assigning, transferring or otherwise disposing of said policy until the controversy was settled. An answer was filed traversing the averments of the petition in so far as the appellants thought necessary.   A reply was filed by the plaintiff company below.   After the pleadings had been made up the trial judge considered a general demurrer filed to the petition and in a very ably written opinion delivered at the time, held that the petition, while showing the plaintiff company entitled to relief, omitted several necessary averments to give a court of equity jurisdiction to pronounce the mistake a mutual one between the parties for which adequate relief could be decreed by the court, and sustained the general demurrer to the petition with leave to amend.   An amended petition being filed to conform to the ruling of the court,

issue was joined and some evidence was taken in the form of depositions, and the case submitted.

The court adjudged that the mistake was a mutual one between the plaintiff company and the defendants, J. C. Hemphill and wife, and directed the cancellation of the indorsements made on the policy whereby Hemphill was given paid-up insurance in the sum of $1,269.00, and the Hemphills were directed to surrender their policy to the company for that purpose, and it was further adjudged by the court that the policy be restored to its status of November 3, 1916 (the date of the indorsement), and that Hemphill was indebted to the New York Life Insurance Company in the sum of $642.00, with interest thereon at the rate of five per cent, payable annually in advance from November 3, 1916, until paid; that as such indebtedness was cancelled at the time said indorsement was made on the policy, its cancellation of said indebtedness should be withdrawn, and said indebtedness restored to the position it occupied at the time of the indorsements on the policy; that the defendants Hemphills, be given the right at their option either (1), to surrender said policy to the New York Life Insurance Company and to receive from it the cash surrender value thereof, amounting to the sum of $137.72; or (2), to have the aforesaid policy loan agreement cancelled and the indebtedness evidenced thereby released, and also to have said policy indorsed as paid-up insurance for $225.00; or (3), to have said policy reinstated and restored to full force and effect upon (a) the payment by the defendant to the New York Life Insurance Company (within sixty days from its date) all of the premiums that became due thereon from and since November 3, 1916, and to this date; and (b), the payments of five per cent interest from November 3, 1916, on said indebtedness, to November 3, 1920, which indebtedness shall remain in lien upon said policy according to the terms of the policy loan agreement, unless an appeal is taken from this judgment; that the defendants shall within sixty days from the entry of this decree elect which of the options, 1, 2 or 3, granted to them, they will accept, and in default of such election, then in such event the options granted to defendants by this decree shall cease and become ineffective, unless an appeal from this judgment is taken.

Without a doubt the chancellor found the justice of the case and embodied it in his decree.

It is the contention of appellants that a life insurance company is bound by the terms of its paid-up insurance and should not be permitted to cancel for fraud or mistake due to its negligence, and in which the assured did not have and could not possibly have had a part. They further say that they did not know anything about the surrender value of the policy or what paid-up insurance they were entitled to on the surrender of the old policy, nor anything about the rules of the company with respect to such matters, but that they merely wrote the company to know how much paid-up insurance the company would grant them for the surrender value of the policy as it then stood, and received from the company a letter informing them they could send in their old policy and have it endorsed so as to give them $1,269.00 in paid-up insurance, and all this was done in the utmost good faith on their part and was a bargain made by the company with them, which is binding upon all concerned. The Hemphills admit, however, that they only asked that the company allow them its different options generally given to policyholders and expected to receive from the company its regular terms with respect to the surrender value of the policy, or the amount of paid-up insurance which the reserve would purchase for them. At the time they received the letter from the company proposing to give them paid-up insurance to the amount of $1,269.00 and to cancel their loan they did not realize nor understand how such conclusion was arrived at nor the mathematics of the proposition; but as they expected only to receive that which the rules of the company ordinarily granted, and the company intended to grant them only such privileges and benefits, there was a mutual mistake. The company was entirely too liberal, making the mistake by failing to deduct from the reserve value of the policy the amount of the loan of $642.00, with accumulated interest, and stated to the Hemphills the amount of paid-up insurance to which they were entitled in consideration of the entire reserve value of the policy with no deduction for the loan which the Hemphills had obtained on the policy. On the other hand the Hemphills, good, honest people, thinking they would be unable to meet the premium payment on November 3rd, and pay the interest on their loan of $642.00, were anxious to adjust the matter before November 3rd, so as to avoid these payments, asked that there be given them only such options and rights as the company usually conceded to its patrons. They asked no

more. But, according to their letter, proposed to accept before November 3rd, one of the options provided by the company to aid its policyholders when they get in such straitened financial circumstances as to be unable to pay the premium on the policy or interest on their loans, and it is clear that the indorsement on the policy giving the assured $1,269.00 of the paid-up insurance was a mistake on the part of the company, and when the assured received the policy so indorsed, in ignorance of the mistake made by the company, likewise received and accepted the said policy so indorsed.

A mutual mistake is one in which both parties participate by each laboring under the same misconception. Coleman v. Illinois Life Insurance Company, 26 R. 900.

Equity always affords relief against mutual mistakes as well as fraud. In this case no inconvenience or wrong will be suffered by either party by the correction of the mistake, but there would be great injustice done if the company should be required to give to the assured a paid-up policy for the balance of his life of $1,269.00 for a premium of $137.00, whereas the regular premium for such policy, at assured's age at the time, would have been more than $700.00. Courts of equity are created for just such purposes; to reach and correct mistakes in which courts of law have no jurisdiction. The mistake is acknowledged by both parties. Hemphill does not deny that he obtained a paid-up policy of insurance for a much greater amount than that to which he was entitled, under all the facts of the case. This is the contention of appellees. Why let such a gross and glaring mistake, resulting in great wrong to one of the parties, go uncorrected?

For the reasons indicated the judgment is affirmed in so far as it gave to appellants the several options named therein. But if the company has other additional options which it customarily allows to its policyholders, these also should be allowed to appellants. Upon a return of the case to the court below the chancellor will fix a reasonable time within which the company shall submit all its options to appellants and a reasonable time thereafter in which appellants may exercise their right of option, and when said options have been exercised by appellants the chancellor will enter a decree in accordance therewith as indicated by this opinion.

Judgment affirmed.