# NEW YORK LIFE INSURANCE COMPANY, Appellant, v. CHARLES E. GILBERT and MYRA M. GILBERT, Respondents.*

In the Kansas City Court of Appeals, December 3, 1923.

1. **INSURANCE**: Return of Insurance Policy to Insurer after Endorsement of Paid-up Insurance Thereon, Held Not to be a Substitution of a New Contract for Original. A life insurance policy, after en-

dorsement thereon of amount of paid-up insurance and its return to insured, containing many provisions in favor of insured that it had in it from time it was first issued, *held* not to be a new contract but merely a continuation of the old contract under an option in favor of insured that was provided for in it.

2. ———: Mutual Mistake: Issuance of Paid-up Policy Held to Have Been Done under Mutual Mistake as to Amount. Where insured, who had borrowed upon a life insurance policy, inquired of insurer as to how much paid-up insurance he could get on his policy, after cancelling his indebtedness, asking insurer to "figure this as fully and clearly as you can so that I can understand it thoroughly," and insurer through mistake of its actuary, answered that the paid-up insurance after cancelling the loan would be $768, when it should have been $296, and upon acceptance of insurer's terms the policy was endorsed for $768 and returned to the insured, *held* that the mistake was a mutual one in that the insured mistakenly supposed that the amount endorsed on the policy was properly calculated as to what he was entitled to under the policy, whereas it was not.

3. ———: Reformation of Instruments: That Equity Will Not Relieve a Party from Results of His Own Negligence is Not the Rule in Missouri. That courts of equity do not relieve a party from the results of his own negligence which are in no way induced by the conduct of the other party, is not the rule in Missouri.

4. ———: ———: Cancellation: Where There Was an Error in an Endorsement as to Amount of Paid-up Insurance, Made Through Mutual Mistake, the Endorsement Will be Cancelled. Where an endorsement as to amount of paid-up insurance was attached to a policy, through mutual mistake, and neither the insured nor his beneficiary was caused any injury thereby, the endorsement will be cancelled.

---

*Headnote 1. Life Insurance, 25 Cyc, p. 791 (1926 Anno); 2. Reformation of Instruments, 34 Cyc, p. 988; 3. Reformation of Instruments, 34 Cyc, p. 948; 4. Cancellation of Instruments, 9 C. J., Section 17.

Appeal from the Circuit Court of Vernon County.—*Hon. B. G. Thurman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Wm. C. Michaels, Henry I. Eager* and *Louis H. Cooke* for appellant,

*Haff, Meservey, German & Michaels* for appellant (of counsel).

*W. M. Bowker* for respondents.

BLAND, J.—This is a suit to reform or cancel on the ground of mutual mistake an endorsement upon a policy of insurance written upon the life of defendant, Charles E. Gilbert and in favor of his wife, Myra M. Gilbert, as beneficiary. The judgment was for the defendants. The policy is on the fifteen-year payment plan and was issued on April 3, 1899, in the sum of $2500. It provided for an annual premium of $117.08, the first premium being acknowledged. The other premiums were to be paid on the 2nd day of January in each year thereafter until fifteen full yearly premiums should have been paid, at which time the policy would be fully paid up. The application stated that the insured was born in the year 1862. After the policy had been in force several years the insured notified the plaintiff that he had made a mistake in the date of his birth and that it occurred in 1861. The policy contained a provision that if the age of the insured be incorrectly stated, the amount payable should be the insurance which the actual premiums paid would have purchased at the true age of the insured. In view of this provision of the policy the premium that insured paid purchased $2450 of insurance instead of $2500.

The policy contained a provision that cash loans might be obtained on it at any time after the policy had been in force for two full years if the premium had been duly paid to the anniversary of the insurance next succeeding the time when the loan was made. On April 11, 1913, defendant made a written application to plaintiff for a cash loan of $1412, representing the full loan value of the policy at that time according to its terms. The loan was made. The policy provided that:

"If any premium or interest is not duly paid, and *if there is any indebtedness* to the Company, this Policy will be endorsed for such amount of Paid-up Insurance as any excess of the reserve held by the Company over such indebtedness will purchase according to the Company's present published table of single premiums, upon written request therefor within six months from the date to which premiums were duly paid."

The reserve was based on the American experience tables and three percent interest.

On December 1, 1913, a few days before the end of the fifteen-year accumulation period of the policy, plaintiff sent to the insured a statement of settlements from which he might make a selection in accordance with the provisions of the policy. One of these options was that the insured might continue the policy in force and accept a cash dividend of $482.55. This choice of settlement was accepted by the insured, and resulted in the insurance continuing in force subject to the loan and in the withdrawal of a cash dividend of $482.55. A new loan agreement similar in form to the original loan agreement was executed on January 2, 1914, and by its terms the policy pledged to plaintiff as security for the loan. Following this no further premium was ever paid on the policy.

Nothing further occurred material to this controversy until December 4, 1920, when the insured wrote the plaintiff as follows:

"I believe I have a loan with you on Policy 936346 which is paid up. I wish you would please let me know how much paid-up insurance I can get on this by your first cancelling the loan and giving me this paid up insurance on the residue.

"I hope you will kindly figure this as fully and clearly as you can so that I may be able to understand it thoroughly."

On December 11, 1920, plaintiff's actuary wrote the insured that if the interest on the loan due on January

2, 1921, should not be paid, the paid-up insurance available after cancelling the loan would be $768. Thereupon insured wrote:

"Replying to yours of December 11th in regard to above policy will say that since I have a loan, the policy is in your possession and I accept your terms of $768 paid-up insurance and cancellation of the outstanding loan."

The interest due on January 2, 1921, on the loan was not paid. Upon receipt of insured's letter accepting the $768 paid-up insurance, plaintiff wrote the insured that the interest not having been paid on January 2, 1921; the indebtedness had been cancelled and the policy endorsed for paid-up insurance amounting to $768 as provided in the contract, and remitted to the insured the policy with an endorsement thereon to that effect. It is this endorsement that plaintiff attempts to correct by showing that the amount of paid-up insurance was incorrectly figured in plaintiff's actuarial office and instead of the paid-up insurance being for $768 it should have been for $296.

The policy bearing the erroneous endorsement was sent to the insured on January 12, 1921. On February 2, 1921, plaintiff discovered that a mistake had been made in the calculation and caused its agent at Kansas City, Missouri, to write the insured at Nevada, Missouri, of the mistake, offering to give the insured paid-up insurance in the sum of $308. The difference between $296, the actual paid-up value of the policy as the undisputed evidence shows, and the amount offered, to-wit, $308, was caused by plaintiff's employee's overlooking the fact that the insured was born in 1861 instead of in 1862. However, the insured refused to accept this amount of paid-up insurance "for the reason that the transaction is closed so far as I am concerned;" that he had accepted plaintiff's offer "and if you had written me then that you would only allow me $308 paid-up insurance, I would not have allowed you to cancel the loan and I would not have accepted the $308 paid up insurance."

Several letters were written to the insured attempting to get his consent to the correction in the endorsement so as to show the true amount of paid-up insurance and offering in lieu thereof to reinstate the policy as it was before the endorsement was made thereon, if the insured would make a new loan agreement and pay the interest on the loan to January 2, 1922, the interest according to the loan agreement was payable in advance. Finally, plaintiff offered to allow insured "to go back to the date when this endorsement was made and make any choice that you choose to make on what shall be done with the policy. The company insisting only that the choice shall consist of the use of the true value of the policy in giving you the benefit you are entitled to." All of these proposition were refused by the insured.

The mistake in calculating the paid-up insurance that insured was entitled to was made in this way: In arriving at the amount of paid-up insurance to which insured was entitled under the terms of the policy, plaintiff used what is known as "the method of proportion." In this calculation the amount of the reserve on the policy is used as the first extreme of the proportion, the amount on the balance of the reserve over indebtedness is used as the first means of the proportion, the amount of the face of the policy as the second mean and the resulting extreme gives the amount of paid-up insurance. Plaintiff's employee who made the calculation used as the first extreme the sum of $643.89, which is the reserve on a $1000 policy, assuming that the insured was born on the date stated in his application; the first extreme should have been $1605.49 which was the real reserve on a policy of $2450, assuming that the insured was born in the year 1861, instead of 1862 as stated in his application; as the first mean of the proportion the sum of $197.73 was used as the balance of the reserve over the indebtedness, which sum was arrived at by deducting from $1609.73, the reserve on the policy at the age stated in insured's application, the sum of $1412, being the amount of the loan

on the policy, and failing to reduce that indebtedness by the sum of twelve cents due insured as the 1919 dividend on the policy. The first mean of the proportion should have been $193.61, being the real balance of the reserve over the indebtedness; as the second mean of the proportion the sum of $2500 was incorrectly used whereas the sum of $2450 should have been used, this was the amount of insurance the insured actually purchased with the premium he paid at his true age. These figures, $643.89: $197.73::$2500:X'' were used in making the calculation when the following figures, ''$1605.49:$193.61:: $2450.00 : X'' should have been used. Simple arithmetical calculation will show that the true amount of paid-up insurance that insured was entitled to was $295.45. But it was a custom on the part of plaintiff to use the next higher number of dollars in order that there should be no odd cents, so that plaintiff finally offered the insured paid-up insurance in the sum of $296, which insured refused to accept. There is no evidence that this last figure is not the proper amount of paid-up insurance provided for by the terms of the policy.

The petition seeks to reform the endorsement on the policy so as to substitute the figures $296 for $768, if defendants so desired, or that the court cancel the endorsement entirely and restore the policy to its *status* at the time the endorsement was made thereon, and that the court order any one of the final settlement options provided by the terms of the policy and loan agreement.

It is plaintiff's contention that when the insured made inquiry as to the amount of paid-up insurance he could get he meant to ask the amount his policy was entitled to and sought to get a settlement under the terms of the policy and nothing else, and that when plaintiff's employee made a miscalculation as to the amount of paid-up insurance due on the policy that this mistake was not only that of plaintiff but of the insured as well; that it was a mistake on the part of the insured for the reason that he did not intend to get any more than the

policy allowed him, and that the insured mistakenly supposed that the amount endorsed upon the policy was the correct one whereas that amount was illegal and excessive. Plaintiff calls our attention to section 6139, Revised Statutes 1919, and section 86 of Chapter 249, Laws of New York, 1911, pleaded in the petition, both of which prohibit an insurance company from discriminating between its insured, and it is insisted that to permit defendants to retain the policy in the excessive amount would be a violation of the Laws of Missouri, the policy being delivered in this State its laws govern. [Cravens v. N. Y. Life Ins. Co., 148 Mo. 583.] Therefore plaintiff says that the endorsement on the policy should be reformed not only on account of a mutual mistake having been made but for the reason that the endorsement is illegal and void on account of the fact that it allows benefits and privileges to defendants that policyholders in plaintiff of the same class do not have, and, further, that plaintiff, as the evidence shows, is a mutual life insurance company.

The theory of the defendants in regard to this transaction is not plainly set forth in their brief. The testimony of the insured tends to show that he knew nothing of how the calculations were to be made; that he had no data on which to make any computation and that he was not acquainted with the basis upon which it was made, and that the insured not knowing anything as to what he was entitled merely wrote plaintiff asking what they would give him after cancelling his loan agreement, and when it replied he accepted its offer, and that the mistake made in the calculation was that of plaintiff and not that of the insured. There seems to be a suggestion in defendants' brief and in insured's testimony that the transaction was a novation that the insured had certain rights in the policy which the company was bound to comply with, and that he was willing to surrender these rights if the company give him paid-up insurance regardless as to any provisions in the policy as to what that amount should be; in other words, that

the company in order to get rid of the burden that the policy imposed upon it, was willing to settle by giving the insured a policy in an arbitrary amount agreed upon between the parties as satisfactory; that the mistake, in any event, in fixing the amount that plaintiff offered the insured was one with which the insured had nothing to do.

It would seem that the determinative question in this case is, was it intended to settle in accordance with the terms of a previous contract or agreement, or was it intended to settle upon an agreement outside of the terms of the policy showing an intention to extinguish the old contract and to make a new one? It seems quite evident to us that it was the insured's intention to settle under the terms of the policy when he wrote his letter of December 4, 1920. In this letter he inquired as to how much paid-up insurance he could get. In the first place the letter assumed that he was entitled to paid-up insurance, which assumption could only be referable to the policy provisions. The amount of paid-up insurance was not to be an arbitrary sum but was to be "figured" so clearly that the insured could understand it. This assumes that it was to be figured upon some basis and under the circumstances then existing it could have had reference to nothing but the provisions of the policy, which is mentioned by number in the letter. It is quite apparent from all the facts that the agreement between plaintiff and the insured was that the settlement was to be made in accordance with the terms of an existing contract or policy; that it was not to be a new contract wholly outside the terms of the old one, or in other words, a substitution of a new contract for the old one, but that it was to be merely a continuation of the old contract under an option in favor of insured that was provided for in it. The policy, after the endorsement and its return to the insured, contained many provisions in favor of the insured that it had in it from the time it was first issued and was by no means a new contract. [20 R. C. L., p. 366.]

215 Mo. App.—14.

The question then remains as to whether the mistake made by plaintiff's employee was a mutual one and not a unilateral one, or one confined to the plaintiff. A similar situation arose in the case of Hemphill v. N. Y. Life Ins. Co., 243 S. W. 1040. In that case the policy was for $2000 and the insured subsequently to its issuance obtained loans upon it totalling $642. Prior to the date upon which a premium became due the insured wrote the company stating that he would be unable to pay the premium and asked what amount of paid-up insurance he could get after cancelling his indebtedness to the company. In calculating the paid-up insurance plaintiff's employee made a mistake in that he neglected to deduct the amount of the indebtedness owing by the insured to the company from the total value of the policy. He found the paid-up insurance to be $1269. The insured accepted this amount of paid-up insurance and it was endorsed on the policy. The company discovered the mistake and that the true amount of paid-up insurance was $225 instead of $1269, and asked the insured to surrender his policy, allowing the company to cancel the endorsement and note the correct endorsement thereon. The insured refused to do so and turned the policy over to his attorney. The company brought an action to reform the policy so as to insert the true amount of paid-up insurance, and if that could not be done that the endorsement on the policy be cancelled and the policy be restored to its *status* at the time the endorsement was placed thereon. The court found that the mistake was a mutual one. The contention of the insured was similar to the one made by the insured in the case at bar. Upon this authority as well as the authority of the following Missouri cases, we hold that the mistake in the case at bar was a mutual one in that the insured mistakenly supposed that the amount endorsed on the policy was properly calculated as to what he was entitled to under the policy whereas it was not. [Bone v. Friday, 180 Mo. App. 577; Goodin Mercantile Co. v. Organ, 186 S. W. 589; Picotte v. Mills, 200 Mo. App. 127.]

New York Life Ins. Co. v. Gilbert.

We have examined the cases cited by the defendants and find none of them at all similar to the case at bar except possibly the case of New York Life Ins. Co. v. Kimball, 106 Atl. (Vt.) 676. There was a strong dissenting opinion in that case. However, we think the facts in the Kimball case are clearly distinguishable from the facts in the case at bar. In that case the insured failed to pay his premium when due and failed to apply for paid-up insurance. Under the circumstances the company, in compliance with the terms of the policy, endorsed it as continued at a reduced amount for a term of three years and 274 days. In making the calculation the company gave the policy credit for an unpaid dividend which should not have been allowed and the policy was continued in force for a longer period than it should have been. The insured died but his death occurred outside of the time that should have been endorsed on the policy if the calculation had been made correctly. The company did not discover the mistake until after the death of insured and thereupon filed a bill in equity to reform and cancel the endorsement. The majority of the court held that the mistake was not mutual. This holding seems to have been based on the fact that the insured at no time during his life knew or had reason to know that any mistake had been made. The court held that the endorsement was not a contract; that it was a mistake of the company and in no way participated in by the insured. Quite different from the facts in this case. Here, the insured applied for paid-up insurance and intended to get the amount of paid-up insurance that he was entitled to under the policy. The opinion in the Kimball case was partly based upon the negligence of the clerk of the company in failing to make the computation correctly. In this connection the court stated, l. c. 679:

"This court has . . . laid down the rule that courts of equity do not relieve a party from the results of his own carelessness and negligence which are in no way induced by the conduct of the other party."

This statement of the law is not the rule in Missouri. [Koontz v. Bank, 51 Mo. 275; Nordyke & Marmon Co. v. Kehlor, 155 Mo. 643, 654; Bone v. Friday, supra, l. c. 582; Picotte v. Mills, supra.]

However, defendants cite the case of Spelman v. Railroad, 187 Mo. App. 119, sustaining the rule concerning negligence laid down in the Kimball case. There is no question but that the result announced in the Spelman case was correct. This court said in that case that the party who seeks equitable relief on the ground of mutuality in a mistake must show that he was without negligence in the matter. The negligence in that case, however, consisted of the failure of plaintiff to read his shipping contract after it was executed and delivered to him. His negligence occurred *after the contract was entered* into and to have permitted him to reform the contract would have brought about great damage to the defendant in that the suit was also for damages on account of delay in the shipment of cattle. In support of his case plaintiff attempted to show that he requested the agent to bill the shipment to Chicago by East St. Louis, Ill., so that he might sell at the latter place if he so desired. The agent issued a through bill of lading to Chicago and the cattle were not sent to the stock yards in East St. Louis, but were sent to defendant's yards in that city where they were finally located by plaintiff but too late for that day's market. Plaintiff sought to recover the damage he suffered because of missing the market of that day. To have permitted the reformation of the contract to show what plaintiff testified to was the true agreement would have resulted in plaintiff's recovery against the company whereas there was no basis for recovery under the contract as issued. It was plaintiff's carelessness in failing to read the contract that would have brought about the loss to the carrier had a recovery been permitted. There was no injury caused the insured by the mistake made in the case at bar. No rights of a third party have intervened nor have defendants acted to their injury upon the assumption that the

amount endorsed on the policy was the true amount of paid-up insurance. The insured thought that the calculation was correct; he did not ask for any more than he was entitled to under his policy; plaintiff discovered the mistake in a short time and immediately notified the insured and sought to have the policy corrected at a time that to have done so would have caused no injury to the insured or his beneficiary.

In view of section 6139, Revised Statutes 1919, prohibiting discrimination among policyholders by insurance companies, plaintiff claims that the endorsement of $768 of paid-up insurance on the policy was void as against public policy, and that such endorsement should be cancelled on this ground. We are of the opinion that the endorsement should be cancelled upon other grounds, so it is unnecessary for us to go into this subject.

We have devoted a great amount of time and research in an effort to find some theory to uphold the ruling of the learned chancellor who tried this case but find that under no possible reasoning can it be sustained. The judgment therefore is reversed and the cause remanded with directions to the lower court to cancel the endorsement on the policy of $768 paid-up insurance and to fix a reasonable time within which plaintiff shall submit all of its options to defendants and a reasonable time thereafter in which defendants may exercise their right of option under the policy and loan agreement, and when such option shall have been exercised, the court will enter a decree in accordance therewith and as indicated in this opinion. All concur.