# OCTOBER, 1930.

WARREN P. BERRY, APPELLANT, v. CONTINENTAL LIFE INSURANCE COMPANY OF MISSOURI, A CORPORATION, RESPONDENT.—33 S. W. (2d) 1016.

St. Louis Court of Appeals. Opinion filed January 6, 1931.

*C. P. Berry* and *Grover E. Dowell* for appellant.

*Curlee, Nortoni & Teasdale, R. F. Moll* and *S. S. Nowlin* for respondent.

NIPPER, J.—This is an action whereby the plaintiff seeks to recover $2,000, the alleged value of a policy of life insurance, plus profits apportionable to said policy amounting to $177.41.

The petition is in the usual form.

Defendant, in its answer, after a general denial, alleges that on the 7th day of September, 1909, plaintiff made and signed a written application to the St. Louis National Life Insurance Company of St. Louis for a $2,000, twenty-payment cumulative twenty-year settlement life insurance policy, with an annual premium of $63; that, upon the receipt of said application, the St. Louis Life Insurance Company accepted and approved the same, and on the 13th day of September, 1909, issued to plaintiff, on plaintiff's life, in accordance with his application, its $2,000 twenty-payment cumulative twenty-year settlement life insurance policy, with an annual premium thereon of $63.

Defendant further alleges that in the preparation of said policy, the National Life Insurance Company in one place in said policy, through a clerical error of the scrivener who prepared the same, inserted the figures "$2,000," when it intended to and should have inserted therein the figures "$952;" that said clause in said policy was erroneously and mistakenly written as follows: "The Company guarantees that the entire cash value of this policy at the end of twenty years from the date hereof shall be $2,000, if all the premiums have been fully paid, and in addition thereto the profits then apportioned." It is alleged that said clause should have contained the figures $952 instead of $2,000. Defendant alleges that in plaintiff's written application, and in several places in said policy, it clearly appears that said policy was a twenty-payment life cumulative twenty-year settlement policy; that the annual premium of $63 did not and could not entitle the plaintiff to the sum of $2,000 in cash under said policy at the end of twenty years. It is also alleged that if the St. Louis National Life Insurance Company intentionally issued such a policy as it was mistakenly and erroneously written, it would have violated the provisions of section 6139, Revised Statutes 1919; that said error and mistake was a mutual one; that it was the mistake on the part of the plaintiff for the reason that he had in his written and signed application only intended to get and take out a twenty-payment life cumulative twenty-year settlement policy, for which he desired and did pay only an annual premium of $63, with a guaranteed cash settlement at the end of twenty years of $952.

Defendant also alleges that since the issuance of said policy, it has taken over all the rights and liabilities of the St. Louis National Life Insurance Company, and that it now has all the rights and liabilities of said last-named company with reference to said policy.

Defendant alleges further that plaintiff has paid the full twenty annual premiums of $63 each, due and payable under said policy, and that the same is now fully matured and paid up in accordance with the terms of said policy, and that under the terms of said policy, plaintiff is only entitled to the sum of $952 as its cash surrender value, and $177.41, its apportioned profits, which said sum was tendered to plaintiff by defendant several times, and again tendered into court, together with all costs made to date.

Defendant then asks the court to reform said insurance policy so that it will conform to the true intent of both plaintiff and defendant, by striking from the policy the figures $2,000 in the clause above set out, and inserting therein the figures $952.

Plaintiff, in his reply, says the policy should not be reformed, because the same was issued to him more than twenty years prior to the filing of this suit; that if any mistake occured in the policy, it was made by the defendant or one of its agents, and that defendant or its predecessor had waited twenty years before taking any action to have said policy reformed. During all of such time plaintiff paid the premiums as they fell due under the terms of the policy, thinking and believing that at the end of twenty years he would be entitled to the sum of $2,000, plus profits then apportionable; that because of these facts defendant has been guilty of laches, and is barred from any right of recovery, if such right ever existed. The reply also alleges that defendant had knowledge of the terms of such policy, and that ever since the month of June, 1924, defendant had actual knowledge of all the terms of said policy, and that during all that time plaintiff paid the premiums on said policy as they became due. It is further alleged that the defendant or its predecessor, the St. Louis National Life Insurance Company, was guilty of negligence in so executing the same; that therefore the policy is binding on defendant, and defendant is not entitled to have it reformed.

The case was tried before the court, and a judgment was rendered reforming the policy in accordance with the prayer of defendant's answer. From this judgment plaintiff appeals.

The evidence discloses that plaintiff on the dates mentioned in the petition took out the policy, and paid the premium of $63 a year for twenty years. After the policy had been in force about fifteen years, some agent or representative of defendant visited him at his home in Montgomery County, Missouri, and told him that under the terms of his policy, he would not receive $2,000 at the end of twenty years. Plaintiff is a farmer, about forty-seven years of age, and lives in Montgomery county. He testified that he had never seen but two life insurance policies, and had read one of them only partly, and read the other, his policy which is involved in this case, several times. Plaintiff testified that he did not know the difference be-

tween a twenty-year life policy and a twenty-year endowment policy, and that he did not know that the loan value and guaranteed cash surrender value under a policy are always the same. He testified that he understood that if he paid a premium of $63 a year, he would receive $2,000 at the end of twenty years; that in June, 1924, some agent or representative of defendant came to him and tried to trade him another policy for the one that he had, and this was the time that he was informed that he would not receive $2,000. He then showed the policy to his brother, who was a lawyer, and after June, 1924, no one from the company, or purporting to be from the company, came to see him or said anything to him about his policy, until he demanded the $2,000 in 1929.

Plaintiff testified that he read this policy several times, and thought he understood it; that at one time he heard some men discuss some life insurance policies, and he got his policy out again, and read it, and read all of its provisions; that he never wrote to the company for any explanation concerning the policy.

The evidence offered on the part of the defendant, in addition to the terms of the policy itself, consisted of the testimony of actuaries of the company. At the time the policy was issued, the only record kept of it was a card record showing that on September 13, 1909, a policy had been issued on the life of plaintiff, a $2,000 twenty-payment life policy, with an annual premium of $63. In the files of the defendant company, under date of June 17, 1924, was the following memoranda:

"Mr. Joel E. Roark and myself called upon Warren P. Berry, of New Florence, Missouri, insured in policy No. 2175 issued by the St. Louis National Life Insurance Company and later re-insured by the Continental Life Insurance Company. The above-numbered policy was issued on the 20-payment life deferred dividend plan at age 27 for $2,000, with an annual premium of $63, which was the proper premium for that kind of a policy. Upon examining the policy we discovered that the values in the policy were in error, and the twentieth year cash value was shown as $2,000, this being the correct value for a 20-year endowment policy and not the correct value for a 20-payment life policy."

The actuary of the defendant company said he had no idea or knowledge of when the card was placed there, but that he found it after he received plaintiff's letter demanding the $2,000.

The plaintiff, as shown by the pleadings and the evidence, seeks to recover the full amount of $2,000, and to prevent defendant's reformation of the policy, upon two theories: First, plaintiff insists there was no mutual mistake, and, second, that the defendant was guilty of laches, barring its right to reformation of the policy.

In the case of New York Life Insurance Company v. Gilbert, 215 Mo. App. 201, 256 S. W. 148, the Kansas City Court of Appeals

had before it a very similar situation, on the question of mutual mistake, to the one we are called upon to deal with in this case. There the insured had borrowed money on a policy of life insurance, and thereafter inquired of the company as to how much paid-up insurance he could get on his policy after cancelling his indebtedness. He asked the company to figure this fully and clearly so that he could understand it thoroughly. The company, through a mistake of its actuary in computing the amount, informed him that the paid-up insurance after cancelling the loan would be $768 when it should have been $296. The insured accepted the terms, and the policy was endorsed for $768 and returned to him. The court sustained the contention of the insurance company and ordered the policy reformed in accordance with its actual terms, and this upon the theory that there was a mutual mistake, because the insured mistakenly supposed that the amount endorsed on the policy was properly calculated. The opinion in that case reviews the authorities in Missouri upon this question, and demonstrates that under the Missouri rule courts of equity will relieve a party from the result of his own negligence, unless he is grossly and inexcusably negligent in the execution of the contract. And mistakes of this character are held to be mutual mistakes. Courts are inclined to give the fullest possible scope to the rule that negligence in executing a contract which is under the circumstances excusable, will not prevent reformation to make the contract conform to the real intention of the parties, because to deny such reformation would ordinarily lead to injustice. It is unnecessary to set out all the provisions of this policy. We refer to them, however, as well as the application. The kind of policy applied for and the policy which the insured received discloses that there was clearly a mistake when $2,000 was written instead of $952. Sixty-three dollars per year premium would not pay for such a policy as plaintiff contends for, and it is clearly evident that a mistake was made at the time the policy was issued. It is true that courts are reluctant to change the terms of a written contract unless the proof is clear and convincing that a mistake has been made of such a character as to entitle the party asking for relief to receive the same at the hands of a court of equity. Yet, in this case plaintiff applied for and received a policy entitling him to $952 instead of $2,000, and defendant would be entitled to have the policy reformed to meet the real intention of the parties to the contract unless it is barred by laches. [New York Life Insurance Co. v. Gilbert, supra; Picotte v. Mills, 200 Mo. App. 127, 203 S. W. 825; Albany City Sav. Inst. v. Burdick, 87 N. Y. 40; Benesch v. Travelers' Ins. Co., 14 N. D. 39; Fidelity & C. Co. v. Palmer, 91 Conn. 410; Komula v. General Accident Fire & L. Assur. Corp., 165 Wis. 520; Columbian National Life Ins. Co. v. Black, 35 Fed. 571.]

Should defendant be denied relief on the ground of laches? That is the next question in the case. Plaintiff argues that defendant should be barred by laches, because it permitted the plaintiff to pay the premiums under this policy for twenty years without bringing any suit to have the same corrected, although it had actual knowledge five years before this suit was brought that the error had been made. This defense of laches is equitable in its nature, and requires the application of the principles of equity in determining whether or not defendant should be barred from its right to reformation of this policy. A similar question was before the court in Columbian National Life Insurance Co. v. Black, supra. In that case the insurance company waited twenty years when a mistake similar to the one in this case was made in the preparation of the policy. The court held that the insurance company was not barred by laches, and, discussing the question, said:

"The relief sought here is not an offensive relief; the relief sought is defensive—a defense asserted against a claim made for the first time a few months prior to the commencement of this suit. The error in the policy was not one that affected the plaintiff's rights when it was discovered. At that time the rights of the parties to the contract were the same under the policy issued and the one intended to be issued. The rights would remain the same for twenty years. If the assured died within that period, the error would not be material or prejudicial. Nor did the company know, at that time, that defendant would maintain his inequitable attitude for twenty years. For all anyone then knew, the defendant might undergo a change in heart during the years, and be content with what he asked for and paid for; and if so, no claim would ever arise. Or, he might lapse his policy during the stretch of years. In any such events, the error would never be material. Under such circumstances we do not believe it was incumbent on plaintiff to seek relief in the courts twenty years before a claim could possibly be made against it, and with a strong probability existing of a claim never being made. Or, to put it another way, if the plaintiff had awaited a suit against it, the defense of reformation would not have been foreclosed by laches; it should not be foreclosed because it promptly went into court to establish its defense when the claim was asserted."

The opinion reviewed the authorities upon this question rather extensively, and held that the insured was not barred by laches. In the instant case, defendant's delay in no way injured plaintiff. Plaintiff was entitled to receive what he applied for and paid for, and defendant by its silence in no way acted to plaintiff's detriment. Under the circumstances revealed by this record, we are of the opinion that defendant was not barred by laches. [Columbian National Life Ins. Co. v. Black, supra; 23 R. C. L. 352; Griswold

v. Hazard, 141 U. S. 260; Buck v. Equitable Life Ins. Co., 96 Wash. 683.]

The judgment of the lower court is accordingly affirmed. *Haid, P. J.,* and *Becker, J.,* concur.