SCHMIDT, Appellant, vs. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

*May 9—September 10, 1940.*

504

The cause was submitted for the appellant on the briefs of *Mayer, Vandercook, Wilde & Rice,* attorneys, and *Walter F. Mayer* of counsel, all of Milwaukee, and for the respondent on the brief of *Lines, Spooner & Quarles,* attorneys, and *L. S. Clemons* of counsel, all of Milwaukee.

The following opinion was filed June 4, 1940:

NELSON, J. For nineteen years prior to 1925, the plaintiff was employed by the defendant as its agent and assistant superintendent in its Milwaukee office. In 1925, he applied for a modified-life, immediate-benefit, twenty-year income policy, with accidental-death and disability-income benefits, under which the premium was to be paid monthly. The rates applicable to such a policy were not detailed in the defendant's rate book. Whenever an application for such a policy was made, the monthly premium had to be figured by the defendant's mathematical department. The plaintiff's application was in writing and contained, among others, the following questions and answers:

"10. Age nearest birthday? 45.
"12. What kind of policy desired? (State clearly if either the Accidental Death Benefits or Disability Income, or both, are desired.)
Modified life, immediate benefit and 20-year monthly income with both A.D.B. and D.I.
"22. Amount of insurance? $5,000. Monthly income $25.
"23. Is premium to be paid annually, semiannually or quarterly? Monthly.
"24a. What amount have you paid in advance on account? $9.65.
"24b. Is this equal to the full first premium? Answer yes or no. Yes."

The plaintiff's application was accompanied by his check for $9.65. The monthly premium applicable to the policy applied for was $9.13. That amount included twenty-three

cents to cover the disability-income provision. The excess premium paid by the plaintiff was returned to him. Thereafter, the defendant deducted the premium each month from the plaintiff's salary. The "modified-life" policy permitted the payment of lower premiums during the first five years than were payable thereafter. The amount of the monthly disability income was not mentioned in plaintiff's application. The defendant's rate book contained the following language:

"The amount of the monthly income is $10 a month for each $1,000 of insurance (except under five, ten, fifteen and *twenty-year monthly-income policies,* where the amount is equal to the monthly income payable at death or maturity)."

In the year 1929, the plaintiff having become permanently and totally disabled as a result of blindness, applied for disability income. The defendant, after investigation, allowed the claim and sent a check to the plaintiff for several months of disability insurance, figured at $50 per month. A stencil was made up containing the name and amount of the monthly disability income, apparently for the purpose of serving defendant's convenience in sending out future checks. Payments were thereafter made for a period of ninety-four months. The defendant then discovered that a mistake had been made by someone in the home office who erroneously concluded that the amount of monthly disability income payable under the policy was $50 instead of $25 per month. The defendant sent several twenty-five-dollar checks to the plaintiff, together with an explanation of the error which it had discovered, but the plaintiff refused to accept them. Some time thereafter, the action was commenced. The policy was not produced at the trial, the plaintiff claiming that it had been lost or misplaced. The plaintiff and his son testified that the policy provided for the payment of $50 monthly disability income. The defendant did not have in

its files a duplicate copy of the policy. Its custom and practice is not to retain in its files a duplicate copy of a policy, but only what is called an "open form brief" which contains the essential details of each policy issued by it. The defendant claimed that the mistake was made at the time the plaintiff applied for disability income rather than at the time the policy was issued. The jury, however, found upon the testimony of the plaintiff and his son that the policy rider provided for the payment of $50. From the depositions of numerous employees of the defendant it appeared that the monthly premium of $9.13 charged the plaintiff was only sufficient to purchase a modified-life policy for $5,000 with an immediate benefit of $615, and monthly income of $25, for twenty years, together with an accidental-death benefit and disability income of $25 per month; that the defendant did not issue a policy providing for monthly disability income which was greater than the amount payable as monthly income for twenty years upon its maturity; and that the policy issued was classified by the defendant as a twenty-year monthly-income policy and was therefore within the exception contained in the rate book, hereinbefore recited. The plaintiff and his son testified that in their opinions the policy was not properly classified as a twenty-year monthly-income policy. It appeared, however, that the plaintiff had never made out an application for such a policy, except for the policy in question, and that the plaintiff's son, who was a life-insurance solicitor, had never taken an application for such a policy. Many original records of the defendant were produced tending strongly to show that if the policy provided for the payment of disability income of $50 per month, such provision was based upon a mistake. We deem it unnecessary to recite the detailed evidence shown by the documents produced.

The plaintiff contends that the trial court erred, (1) in failing to submit to the jury the issue whether the policy in

question was properly classified as a twenty-year monthly-income policy under the provision in the rate book relating to disability income, which was as follows:

"Upon the payment of a slightly increased premium, this provision may be inserted in certain classes of policies in lieu of the 'Regular Disability Provision.' Under the Disability Income Provision, if the insured becomes totally and permanently disabled prior to age sixty, the payment of subsequent premiums will be waived and a monthly income will become payable during the entire lifetime of the insured while totally disabled, without any deduction from the amount of insurance payable at death or maturity. The amount of the monthly income is $10 a month for each $1,000 of insurance (except under five, ten, fifteen and twenty-year monthly-income policies where the amount is equal to the monthly income payable at death or maturity), the first instalment of the income to be payable immediately upon receipt of due proof of disability;"

(2) in determining that issue instead of granting a new trial to permit another jury to determine it; and (3) in holding that a mutual mistake of fact was made.

It is argued that the amendment of defendant's counterclaim just prior to the trial confused the plaintiff's attorney to such an extent that he did not appreciate the full import thereof, and as a result did not request the court to submit to the jury the issue relating to the proper classification of the plaintiff's policy. It appears that the depositions of the employees of the defendant were taken nearly a year before the trial, and that when the court was engaged in framing the verdict the plaintiff's attorney stated that it seemed to him that there was but one issue to submit to the jury. Under the circumstances, there was in our opinion no error in allowing the defendant to amend its counterclaim and no error in submitting only one question to the jury.

It is further alleged that the trial court erroneously assumed an excess of right and power under sec. 270.28,

Stats., in determining a primary factual issue which the plaintiff now contends should have been submitted to the jury. The argument assumes that the trial court acted under sec. 270.28, Stats., which provides:

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto.*"

We deem it unnecessary to determine whether the plaintiff's argument would be sound in an action at law where a vital issue of fact had been overlooked. Compare *Smith v. Poor Hand Maids of Jesus Christ,* 193 Wis. 63, 213 N. W. 667; *Scharine v. Huebsch,* 203 Wis. 261, 234 N. W. 358; *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 249 N. W. 67, and cases therein cited.

We consider that the law of those cases is not applicable here because there was in this case a legal issue triable by the jury and an equitable issue triable by the court. Sec. 270.07 (1), Stats., provides:

"An issue of fact in an action for the recovery of money only, or of real or personal property or for divorce on the ground of adultery, must be tried by a jury except as otherwise provided in this chapter and except that *equitable defenses or counterclaims* are triable by the court. Every other issue must be tried by the court, but the court may order the whole issue or any specific question of fact involved therein to be tried by a jury; or may refer an issue as provided in section 270.34."

Sec. 270.08, Stats., provides, in part, as follows:

"When in any action there shall arise issues triable by a jury and other issues triable by the court the court shall, in its discretion, direct the trial of the one or the other to be first had, according to the nature of the issues and the in-

terests of justice, and judgment shall be given upon both the verdict and the finding of the court, when both shall be found."

In our opinion, the court properly submitted to the jury the issue of fact as to the amount of disability income provided in the policy, and itself properly determined the equitable issue raised by defendant's counterclaim. The procedure of first having the jury determine the legal issue, then determining the equitable issue, was in our opinion proper and not subject to criticism.

The plaintiff contends that the trial court erred in finding that a mutual mistake was made.

Life-insurance policies, like all contracts, are subject to reformation for mutual mistake. Appeals from judgments which reformed provisions of insurance policies have often been considered by this court. *Wisconsin Marine & Fire Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777; *Komula v. General Acc., F. & L. Assur. Corp.* 165 Wis. 520, 162 N. W. 919; *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 205 N. W. 800; *Modern Grinder M. Co. v. Globe & R. F. Ins. Co.* 192 Wis. 319, 212 N. W. 523; *Barly v. Public Fire Ins. Co.* 203 Wis. 338, 234 N. W. 361; *Fountain v. Importers & Exporters Ins. Co.* 214 Wis. 556, 252 N. W. 569; *Wisconsin Auto Racing Asso. v. Home Ins. Co.* 216 Wis. 321, 257 N. W. 7. Reformation of insurance policies is proper when a mutual mistake has been made. A mistake as to the amount of the cash-surrender value of a policy at the end of ten years was even held to be a good defense in a law action. *Hibbard v. North American Life Ins. Co.* 192 Wis. 315, 318, 212 N. W. 779. After reviewing the testimony which clearly showed that a mistake was made in the policy as to the amount of the cash-surrender value at the end of ten years, this court said:

"In view of such testimony and such a result, can it for a moment be seriously claimed that such was the contract

the parties or either of them had in mind? We think not. The statement of the proposition is the clearest and most convincing argument that can be made in favor of the result we reach, and dispenses with the application of other rules of construction. It may be safely asserted that both parties contemplated a contract not substantially out of harmony with the rates and terms that prevailed among like or similar insurance companies."

It is further argued that no mutual mistake was made, since if a mistake was made, it was made by the defendant's clerks and not by the plaintiff. That argument, in our opinion, ignores the nature of an application for life insurance, its acceptance by the company, followed by the issuance of a policy pursuant to such application. In this action, it appears that the plaintiff, an experienced insurance agent and superintendent, applied for a certain life-insurance policy with accidental-death and monthly disability-income benefits. The rates applicable to such a policy were not listed in the defendant's rate book. Clearly, what the plaintiff applied for was a policy containing the several features of protection, and what he intended to have issued to him was such a policy as the defendant customarily issued for its regular premium rates then existing. There is no suggestion in the evidence that the plaintiff intended to obtain a policy containing benefits in excess of those which his premiums would purchase. Clearly, the defendant intended to issue the policy applied for. When the plaintiff's application was accepted there was a meeting of the minds as to the kind of policy to be issued. In our opinion, the mistake was mutual. While the mistake was made by someone in defendant's home office, it does not follow that the mistake was unilateral, since insurance companies are not permitted to treat persons of the same class differently. Sec. 206.33 (1), Stats., provides:

"(1) No life insurance company shall make or permit any distinction or discrimination between insurants of the

same class and equal expectation of life in the amount or payment of premiums or in any return of premium, dividends or other advantages."

The plaintiff did not expect, and could not have expected, that he would be given benefits or advantages which under the premium paid he was not entitled to. Had a mistake in favor of the defendant, instead of the plaintiff, been made, the plaintiff doubtless would have maintained, and rightly, that he was entitled to a reformation of the policy. If the defendant had mistakenly inserted in its policy a disability income of $15 per month instead of $25 a month, the correct amount, reformation undoubtedly would have been decreed.

We are not unmindful of the fact that some courts have held in somewhat analogous situations that such a mistake is unilateral, not mutual, and consequently have denied reformation. *New York Life Ins. Co. v. Kimball,* 93 Vt. 147, 106 Atl. 676, but see *Kimball v. New York Life Ins. Co.* 94 Vt. 100, 108 Atl. 921; *New York Life Ins. Co. v. Street* (Tex. Civ. App.), 265 S. W. 397; *Kaufman v. New York Life Ins. Co.* 315 Pa. 34, 172 Atl. 306. But there are many cases holding the contrary. See *Buck v. Equitable Life Assur. Co.* 96 Wash. 683, 165 Pac. 878; *Hemphill v. New York Life Ins. Co.* 195 Ky. 783, 243 S. W. 1040; *New York Life Ins. Co. v. Gilbert,* 215 Mo. 201, 256 S. W. 148; *United States F. & G. Co. v. Beckman,* 278 Mich. 516, 270 N. W. 770; *Berry v. Continental Life Ins. Co.* 224 Mo. App. 1207, 33 S. W. (2d) 1016; *Stark v. Masonic Life Asso.* 180 N. Y. Supp. 235; *Haley v. Sharon Tp. M. F. Ins. Co.* 147 Minn. 190, 179 N. W. 895; *Long v. First Nat. Life Ins. Co.* (La. App.) 160 So. 833; *Columbian Nat. L. Ins. Co. v. Black* (10th Cir.), 35 Fed. (2d) 571, 71 A. L. R. 128.

In several of those cases it was held that a mutual mistake existed because the applicants intended to receive the particular policy applied for and the company intended to issue

only such a policy. The principles stated in *Modern Grinder M. Co. v. Globe & R. F. Ins. Co., supra,* have application to this controversy although written in a case involving the reformation of a fire-insurance policy (p. 323) :

"The ordinary method and course of dealing by which parties procure insurance upon their property is a matter of common knowledge, and the language and conduct of the parties must be interpreted in the light of the surrounding circumstances. While insurance in legal theory and in fact rests upon contract, in common practice it is dealt with more as if it were a commodity kept for sale. This attitude of mind which obtains in the business world is due no doubt in large part to the standardization of insurance policies by legislative enactment and by long-continued practice. The customer specifies the amount and kind of insurance he wishes to purchase, the representative of the insuring company undertakes to comply with the request. The terms of the contract are largely statutory. The details fall into certain categories. All parties to the transaction understand what is intended, and evidence relating to the transaction cannot therefore be tested by the rules that would apply to a negotiation respecting a fresh transaction, the details of which were to be worked out and agreed upon in the course of the negotiation and set forth in a writing between the parties."

We conclude that the trial court properly found that a mutual mistake existed and that reformation of the policy was proper.

Since the excess payments were made by mistake, we perceive no error or injustice in permitting the defendant to recover them as money had and received. In equity and good conscience, the plaintiff should repay what was paid to him by mistake.

We appreciate that this case is "a hard case." Hard cases are those which give rise to sympathy. Such cases sometimes result in bad law. We consider that simple justice re-

quires that mutual mistakes in insurance policies be corrected by courts of equity when such mistakes are satisfactorily proven, regardless of whether such mistakes are in favor of or against an insured.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on September 10, 1940.