JOURNAL COMPANY, Respondent, vs. GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LIMITED, and another, Appellants.

*October 21—November 17, 1925.*

*Insurance: Automobile liability: Extent of coverage: Construction of policy: Reformation: Failure to read policy: Estoppel: Mistake as to coverage: Concurrent actions: Failure to deliver policy as ordered: Liability of insurance agent.*

1. An automobile liability insurance policy, indemnifying a newspaper publisher against loss occasioned while the automobiles covered thereby were being used for the transportation of materials and merchandise in connection with the business of the insured, covers a loss sustained while plaintiff's truck was returning from a gathering of newsboys supervised and conducted by the insured, where the automobile had been used to transport favors, prizes, and refreshments to such gathering and on its return contained some newspapers of the insured and one of the empty containers in which refreshments had been taken to the gathering, although the dominant purpose of the use of the truck at the time was the return of the newsboys to their homes.   p. 145.

Journal Co. v. General Acc., F. & L. Assur. Corp. 188 Wis. 140.

2. The insured is not estopped to sue for reformation of the policy because of a mistake, in that the policy did not cover the transportation of its newsboys to and from its social and recreational activities, because it did not read the same or sooner discover its provisions, where the real extent of the coverage afforded by the policy was not clear, and the insurer stated to the insured that the policy delivered furnished the coverage desired.   p. 147. ·

3. While, as a general proposition, reasonable diligence is exacted of a party seeking reformation in acquiring a knowledge and understanding of the provisions of an ordinary contract, a complete knowledge and understanding thereof is not an inexorable requirement.   p. 148.

4. The complaint in this case, seeking reformation of the policy, states a cause of action, notwithstanding the insured did not read the policy, where the real extent of the coverage afforded by the policy was not clear.   p. 150.

5. A mistake constituting a misapprehension concerning the extent of the coverage afforded by the policy and not the legal effect of the terms used was a mistake of fact.   p. 150.

6. An action on the policy as written did not bar a concurrent cause of action to reform the contract.   p. 150.

7. If an agent of the insurer agreed to deliver a policy which should indemnify insured against damage while the automobile was used in transporting its newsboys and it failed so to do, and insured sustained damages thereby, the agent would be liable therefor.   p. 151.

APPEAL from an order of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge.   *Affirmed.*

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

OWEN, J.   This is an appeal from an order overruling demurrers to four separate causes of action set forth in respondent's amended complaint.   All four causes of action grew out of an automobile liability insurance policy issued

by the defendant to the plaintiff.    The plaintiff is the publisher of a newspaper in the city of Milwaukee.    Prior to the 30th day of September, 1923, it made application to the appellant *Roberts Company,* which is a duly licensed and authorized agent of the appellant *General Accident, Fire & Life Assurance Corporation, Ltd.,* for automobile liability insurance to indemnify the plaintiff against any loss or damage which it might sustain in connection with the operation of its automobile trucks.    Pursuant to this application an insurance policy was delivered to the plaintiff, by which, in general terms, the appellant *Assurance Corporation* agreed "to indemnify the assured . . . against loss . . . for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered while this policy is in force, by any person or persons other than employees engaged in the usual course of trade, business, profession, or occupation of the assured, by reason of the ownership, maintenance, or use, within the limits of the United States of America or Canada, of any of the automobiles enumerated and described in statement 5 of said declarations;" "and to defend in the name and in behalf of the assured any suits, even if groundless, brought against the assured to recover damages on account of such happenings as are provided for by the terms of the preceding paragraph."

On the 8th day of February, 1924, the plaintiff, in connection with its business of newspaper publisher, and as part of the social, educational, and recreational activities supervised and conducted by it for the newsboys who buy its papers, supervised and conducted an educational and recreational gathering for some of the newsboys who purchase its papers, which gathering of newsboys was held at the station of the plaintiff at the city of South Milwaukee.    One of the automobiles owned and operated by the plaintiff and covered by the policy of insurance mentioned was used to transport one of the employees of the plaintiff, some of the newsboys,

and refreshments to said gathering. At the close of the meeting the driver of said automobile proceeded to take said newsboys to their homes and then to drive said automobile back to the city of Milwaukee to the garage of the plaintiff. While being so operated and occupied by several newsboys said automobile was struck by a passenger train, killing six of the newsboys and injuring another. At the time of the accident there was being transported in said automobile some newspapers of the plaintiff which were being returned from its station in South Milwaukee to plaintiff's place of business in the city of Milwaukee, and also an empty container in which refreshments had been taken to the entertainment. Thereafter actions were brought against the plaintiff to recover damages growing out of the deaths and injuries of the newsboys. The defense to said actions was tendered to the insurance company by the plaintiff, and upon due consideration the insurance company declined to defend said actions, on the ground that the insurance policy did not cover or indemnify the plaintiff against damages resulting from the accident. The plaintiff then proceeded to compromise the various actions brought against it for deaths and personal injuries, and brought this action.

The demurrer to the first cause of action raises the question whether the policy covered the accident. It will be noted that the provision of the policy already quoted indemnifies the assured against loss by reason of damages on account of bodily injuries, including death, accidentally suffered by any person or persons other than employees by reason of the use of said automobiles enumerated and described in statement 5 of said declaration. It is not contended that the newsboys killed or injured were employees of the plaintiff, neither is it contended that the automobile in which they were riding was not covered by the policy. The contention on the part of the defendant is that at the time of the accident it was not being used in the usual course of trade, business, profession, or occupation of the assured,

and that it was not being used for the purposes specified by the policy.  As is usual with such policies, the general coverage provision is followed by conditions which amount to limitations upon the general provision.  The policy in question included various conditions designated condition A to condition Q, inclusive.  By condition B it was provided that "this policy does not cover any obligation assumed by or imposed upon the assured by any workmen's compensation agreement, plan, or law, or cover any loss caused or suffered by reason of the ownership, maintenance, or use of any automobile under any of the following conditions: . . . (3) While being used for any purpose other than as specified in statement No. 6 of said declarations."  A schedule of declarations containing various statements presumably made by the plaintiff upon application for the policy is appended thereto, and statement 6 thereof is as follows: "The purpose for which the above-described automobiles are to be used are transportation of materials and/ or merchandise in connection with the assured's business described in statement No. 7, excluding pleasure use."  Statement No. 7 is: "Assured's occupation or business is newspaper publishers."

The sum and substance of these various provisions when brought together is this: The *Assurance Corporation* agrees to indemnify the plaintiff against loss by reason of damages sustained by any person or persons other than employees on account of bodily injuries, including death, occasioned by the ownership or maintenance of said automobiles while said automobiles are being used for the transportation of materials and/ or merchandise in connection with the assured's business, which is that of a newspaper publisher. The complaint alleges that this gathering of newsboys was held and supervised by the plaintiff in connection with its business as publisher of a newspaper to instruct them in salesmanship, and that this automobile had been used to transport favors, prizes, and refreshments to said gathering,

and that at the time of the accident there were being transported in said automobile some newspapers of plaintiff which were being returned to the plaintiff from the station at South Milwaukee, and one of the empty containers in which refreshments had been taken to said gathering. It is also alleged in the complaint that some of the newsboys were being taken to their homes by the driver of said automobile. This is the use to which the automobile was devoted at the time of the accident. Does this use bring it within the terms of the policy?

The coverage provided by the policy requires that the automobiles be used for the transportation of materials and/ or merchandise in connection with the assured's business. It appears from the complaint that the automobile had been used to convey favors, prizes, and refreshments to a gathering of newsboys. Manifestly, on the way to the gathering the automobile was being used for the transportation of materials and/ or merchandise. It is manifest that, having made the trip to the gathering, it was necessary for it to return. Since it was engaged in the transportation of materials or merchandise on the trip to the gathering, it plausibly can be argued that its use for that purpose continued on its return trip, as, obviously, it was necessary for the truck or automobile to return from the gathering, whether empty or loaded. However, it is not necessary to pursue that thought, as there is an affirmative allegation in the complaint that even upon the return trip it carried an empty container as well as a package of newspapers. Both of these articles constituted materials or merchandise and their carriage was in connection with the assured's business as newspaper publisher. Even though it be argued that the carriage of these articles was a mere incident, and that the dominant purpose of the use of the automobile at that time was the return of the newsboys to their homes, still the policy does not require that the carriage of merchandise or material

shall be the dominant purpose for which the automobile is then being used. If at the time of the accident the automobile is being used for the transportation of materials or merchandise, it is within the terms of the policy. It results that the allegations of the complaint state a cause of action entitling the plaintiff to recover the amount of damages which it suffered by reason of the accident up to the limit fixed by the policy, and that the demurrer to this cause of action was properly overruled.

The complaint also alleges a cause of action for a reformation of the policy. In view of our construction of the policy reformation thereof becomes unnecessary if the plaintiff can prove its allegations concerning the purposes for which the automobile was used at the time of the accident. But if it should fail in such proof, then the question of whether the policy should be reformed would become material, and it seems advisable for us to determine whether the demurrer to that cause of action was also properly overruled. This question arises upon the allegations that the plaintiff made an application for a contract of insurance which should cover the use of said automobile trucks not only for the purpose of transporting material or merchandise but for the purpose of transporting newsboys who purchased its papers to and from social, educational, and recreational activities supervised and conducted by the plaintiff for said newsboys, and that when said policy was delivered to the plaintiff by said defendant said defendant informed and advised the plaintiff that it covered the use and operation of the automobile truck of the plaintiff not only for the purposes of transporting material and merchandise but for the purpose of transporting newsboys as well, and that it accepted said policy with the understanding and in reliance on the statements and representations of said defendant that said policy did cover such uses and operations, and that it did not know that the said policy did not cover the transportation of newsboys until after the accident. Reformation

of statement 6 is prayed so that it will read as follows: The purposes for which the above described automobiles are to be used are transportation of materials and/ or merchandise and/ or newsboys to and from social, educational, and recreational activities in connection with assured's business described in statement No. 7, excluding other use.

The defendant contends that the plaintiff is estopped to claim a mistake in the writing of the policy because it did not read the same or sooner discover its provisions, and relies upon *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. That was an action for rescission of an insurance contract and the recovery of premiums paid. There had been much negotiation between the plaintiff and the insurance agent concerning the character of the policy to be written. The agent strenuously recommended a five per cent. debenture policy. The plaintiff insisted from first to last that he did not want a policy that could not be paid up in ten years; that he would take a ten-payment policy and no other. Although the agent persistently recommended a five per cent. debenture policy, he did not say that such policy would require annual payments for life. Finally, the agent said he would obtain for plaintiff what the latter wanted, made out an application which the plaintiff signed, and in due time the policy was delivered, accompanied by a letter of transmittal, the opening lines of which were to the effect that it was a five per cent. debenture annual premium policy such as the agent had urged plaintiff to take. The plaintiff threw the policy into his desk and did not look at it for three months. The court held that the laches of the plaintiff in not earlier discovering that the policy was not what he had ordered forfeited his right to rescind. The court emphasized the fact that a casual glance at the policy would have informed plaintiff that it was not the kind of policy he ordered. We cannot say that is true in the present case. The general coverage provision which occurs earlier in the policy is subsequently

modified by conditions and statements so as to require careful reading if not a close analysis by a mind schooled in the interpretation of such contracts to ascertain the real extent of the coverage 'afforded by the policy. The respective contentions in this case show that able lawyers disagree as to its proper construction. Moreover, this case differs from the *Bostwick Case* in that it is here alleged that the defendant assured the plaintiff that the policy delivered furnished the coverage desired, whereas the letter of transmittal in the *Bostwick Case* called attention to the fact that the policy delivered was the policy which the agent had persistently recommended.

Insurance policies like other written instruments have been the frequent subjects of reformation by the courts. While, as a general proposition, reasonable diligence is exacted of the suitor seeking reformation in acquiring a knowledge and understanding of the provisions of an ordinary contract, it is obvious that a complete knowledge and understanding thereof is not an inexorable requirement, else few contracts would be reformed.. While it is a general rule that the ordinary contract should at least be read by the person seeking reformation, the weight of authority does not seem to require this with reference to insurance contracts. The reason is quite obvious. The assured has little or nothing to say concerning the form of the contract. In many instances this is prescribed by law. In common practice the assured informs the agent of his coverage necessities and leaves it entirely to the agent to provide therefor. The average individual accepts the policy tendered relying upon the assurance on the part of the insurer, express or implied, that the policy affords him the coverage desired. In many instances a reading of the policy would not be enlightening to the assured. It is couched in technical terms and often complicated and involved. This is especially true of the ordinary accident or liability policy, where a provision ap-

parently affording general and sweeping indemnity is conditioned and limited by general subsequent provisions, many of which have slight bearing upon the specific liability assumed. In 23 Ruling Case Law, 351, it is said that—

"The fact that insured accepted a policy of fire insurance without noticing a mistake is generally held not to preclude him from having the mistake corrected, even though he failed to read the policy over or carelessly read it. Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments. But there is authority to the effect that it is the duty of the insured to read and know the contents of his policy before accepting it; and that if one can read his policy, his failure to do so is such gross negligence as conclusively estops him from denying knowledge of its contents, unless he was dissuaded from reading it by some trick, artifice, or fraud of the other party to the agreement." See, also, 14 Ruling Case Law, 902.

In 32 Corp. Jur. 1142, it is said:

"Whether the failure of the insured to read and examine the policy is such negligence on his part as defeats his right to a reformation depends on the facts and circumstances, it being sometimes held that there is negligence, but more often that there is not."

Though not read by the assured, this court reformed an insurance policy in *Komula v. General Acc., F. & L. Assur. Corp.* 165 Wis. 520, 523, 162 N. W. 919, to express the real agreement between the parties. In that case the reason for exonerating the assured from negligence in not having read the policy was probably greater than here. But in a very recent and well-considered case the supreme court of Nebraska granted reformation under circumstances very similar if not identical with those here presented. *Robinson v. Union Automobile Ins. Co.* 112 Neb. 32, 198 N. W. 166. Our conclusion is that the second cause of action set forth in

the complaint states a good cause of action for the reformation of the insurance policy so as to express the real agreement of the parties.

A contention is made by the appellants that the mistake pleaded is one of law and not of fact, but there is no substance in this contention. The mistake was a misapprehension concerning the terms of the policy—not the legal effect of terms used. This is a mistake of fact.

It is further contended that the plaintiff cannot sue on the contract as it exists and at the same time demand relief in the way of specific performance. "It may be generally stated that an action at law upon a policy of insurance as written and its prosecution to final judgment bar the insured from bringing a new suit in a court of equity for the purpose of reforming such policy." 12 L. R. A. N. s. 907, note. It is the judgment, however, rendered in the cause of action at law which operates as a bar to an action thereafter brought to reform. A perusal of the authorities reviewed in the note mentioned indicates that the mere pendency of an action at law to recover on the contract as written concurrently with an action to reform the contract is not a bar to the reformation of the contract. This latter principle should be peculiarly true in this state where all distinctions between actions at law and suits in equity have been abolished (sec. 2600, Stats.) ; where the plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable, or both (sec. 2647) ; and where, even after trial, it shall appear to the court that any party claiming affirmative relief or damages has mistaken his remedy, his action shall not be finally dismissed and he shall be allowed a reasonable time within which to amend, and the amended action shall continue. Sec. 2836b. In fact, it has been held by this court that an insurance policy may be reformed in an action brought to recover upon the policy as issued. *Coats v. Camden Fire Insurance Asso.* 149 Wis. 129, 135 N. W.

524.    These considerations are abundant answer to this contention.

The third cause of action was one for specific performance compelling the insurance company to defend the actions brought against the plaintiff, but as those actions have all been settled, that cause of action drops out of the case, and we are not asked to consider it.

The fourth cause of action is alleged against the defendant *Roberts Company* for damages because of its failure to deliver the form of policy which it agreed with the *Journal Company* to deliver.  If it agreed with the *Journal Company* to deliver a policy which should indemnify the plaintiff against damage while the automobile was used in transporting its newsboys and it failed so to do, and the *Journal Company* sustained damages by reason of such failure, the *Roberts Company* is liable for such damages.  *Rainer v. Schulte,* 133 Wis. 130, 113 N. W. 396; *Milwaukee B. Co. v. Graebner,* 182 Wis. 171, 196 N. W. ·533. ˙The demurrer to this cause of action was also properly overruled.

*By the Court.*—Order affirmed.