MODERN GRINDER MANUFACTURING COMPANY, Respondent, vs. GLOBE & RUTGERS FIRE INSURANCE COMPANY OF NEW YORK, Appellant.

*February 10—March 8, 1927.*

*Insurance: Mistake: Reformation of policy to conform to kind purchased: Judicial notice: As to method of insuring property.*

1. While insurance, in legal theory and in fact, rests upon contract, in common practice it is dealt with more as if it were a commodity for sale; and the ordinary method and course of dealing by which parties procure insurance being a matter of common knowledge, the language and conduct of the parties must be interpreted in the light of the surrounding circumstances. p. 323.

2. An insured and the agents representing the insurer intended that a fire insurance policy be issued covering insured's building and contents, and, the memorandum notation on the policy indicating that such a policy was issued, the insured paid the correct premium. In fact, however, and due to a clerical error, the policy had attached a "use and occupancy form" instead of an "on contents" form, and the contents of the building were not covered by the policy. *Held,* that after loss the insured was entitled to have the policy reformed so as to cover the contents of the building and to recover on the reformed policy. p. 324.

3. The fact that the insurer could have obtained reinsurance on the fire risk will not prevent reformation of the policy to cover a loss by fire, the rule that reformation will be denied where the parties cannot be placed *in statu quo* being inapplicable where the insured had no knowledge of the practice of the insurer and was in no way responsible for the mistake which had occurred. p. 325.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

Reformation of policy of insurance and the right of the insured to recover thereon. The facts upon which the controversy of this case rest can be best stated in the language of the findings:

"(4) That some time prior to the 22d day of September, 1924, the plaintiff was solicited by Greiner & Cohen, a

partnership engaged in the business of writing fire insurance, and local agents for several fire insurance companies, including the defendant company, for insurance against loss or damage by fire, upon its property and stock in trade contained in said building in the city of Milwaukee.

"(5) That said solicitation of Greiner & Cohen was for fire insurance to take the place of certain policies of fire insurance then held by plaintiff in other companies, and procured through one Charles Krohn, all the provisions thereof to be renewed, including the provision as to the duration of time for one year.

"(6) That the said plaintiff consented and verbally agreed with the said Greiner & Cohen that they should so insure the said property against loss or damage by fire in the amount of eight thousand ($8,000) dollars, for one year from the 22d day of September, 1924, and that said Greiner & Cohen agreed to make out and deliver to plaintiff a policy of insurance for eight thousand ($8,000) dollars, insuring its personal property and stock in trade contained in said building against loss or damage by fire, for a period of one year.

"(7) That on said 22d day of September, 1924, in furtherance of said verbal agreement and in an endeavor to carry out the same, the said defendant, through said Greiner & Cohen, acting as its agents, and duly authorized to represent and bind it, executed and delivered to plaintiff a policy of insurance in its fire insurance company in the sum of eight thousand ($8,000) dollars, intending to insure and supposing it had insured the plaintiff against loss by fire on contents, as agreed, but by mistake of the scrivener of said policy in the employ of said Greiner & Cohen it insured the plaintiff against loss on the use and occupancy of said building and equipment, the said scrivener inadvertently attaching a form 'on use and occupancy' instead of 'on contents,' and which mistake was not discovered by either party until after the fire hereinafter mentioned.

"(8) That the indorsement on the outside of said policy shows the property insured to be 'Conts. 64-70 Reed street, Milw.,' which indorsement Mr. Ische, plaintiff's secretary, examined when receiving the policy, and acted and relied upon and was misled thereby, he failing on account of such indorsement to examine the body of said policy, believing

the form attached to the policy to conform with such indorsement on the outside.

"(9) That the plaintiff paid the defendant a premium of eighty-nine and 60/100 ($89.60) dollars for eight thousand ($8,000) dollars fire insurance, for one year, which was the then regular fire insurance premium for one year on contents of plaintiff's said building, being at a rate of $1.12 per $100, with 90 % co-insurance, while the rate of insurance on policies held by plaintiff covering loss on use and occupancy of said building was considerably cheaper, and the policies on use and occupancy held by plaintiff did not designate a co-insurance rate by way of indorsement on the outside of said policy.

"(10) That there also was and is an indorsement of the rates on the outside of said policy, being $1.40 without co-insurance, or $1.12 per $100 with 90 % co-insurance, which indorsement as to the rates also misled Mr. Ische when examining the policy, the indorsements on the outside of the U. & O. policies held by plaintiff being essentially different and readily distinguishable, and the indorsement on the outside of the policy in question leading Mr. Ische to believe that it actually covered fire loss, and being the cause of his not examining it any further.

"(11) That plaintiff's secretary, Mr. Ische, exercised ordinary care in examining and relying upon the indorsement upon the outside of said policy.

"(12) That the plaintiff in truth and in fact paid for fire insurance on contents, and that the indorsement on the outside of said policy as to the property insured and rate of insurance led both plaintiff's and defendant's representatives to believe that the policy itself provided for fire insurance on contents, and that by reason of such outside indorsement and the mutual mistake of the parties in supposing the policy to conform with such indorsement, this plaintiff, as well as the defendant, were misled, and the mistake was not discovered until after the fire hereinafter referred to. . . .

"(15) That the defendant had, in effect, at the said time a contract of reinsurance, whereby it might have reinsured the said policy by entry thereof on certain lists kept by the general agents of the defendant in the city of Milwaukee. That the defendant had no notice of any mistake of Greiner & Cohen, or of the plaintiff, as to the writing of the said

322    SUPREME COURT OF WISCONSIN.  [Mar.

Modern Grinder M. Co. v. Globe & R. F. Ins. Co. 192 Wis. 319.

policy, and that the total amount of insurance on the risk exceeded the amount which the defendant had placed as the maximum which they would insure the said risk. That the first notice of the defendant that the plaintiff claimed that the said policy was for loss by injury to the contents and not in accordance with the form written by Greiner & Cohen, was after the said loss, when the defendant no longer had a right to reinsure the said risk." . . .

Upon that branch of the case relating to the right of the plaintiff to have reformation of the contract, the court concluded as a matter of law:

"That by reason of mutual mistake the policy of insurance in question does not embody the real intent of the parties.

"That the defendant is primarily responsible for such mistake, the scrivener of the policy having inadvertently attached a form on 'use and occupancy' instead of 'on contents.'

"That it was supposed all along by both parties that the body of the policy conformed with the indorsement on the outside, and that such mistake was not discovered by either party until after the fire. . . .

"That plaintiff is entitled to a reformation of said policy so as to have it cover insurance against loss by fire on contents instead of loss against use and occupancy.

"That owing to the fact that defendant is primarily responsible for such mistake, plaintiff's equity is superior to that of defendant, and that plaintiff's right to relief should not be defeated or impaired because defendant cannot be placed *in statu quo* owing to its failure to reinsure."

There was judgment accordingly, from which the defendant appeals.

For the appellant there was a brief by *Fish, Marshutz & Hoffman* of Milwaukee, and oral argument by *Irving A. Fish.*

For the respondent there was a brief by *Orth & Orth* of Milwaukee, and oral argument by *Charles A. Orth.*

Rosenberry, J. On behalf of the defendant it is urged that there can be no reformation of a written contract unless

an oral contract complete in all its parts was entered into between the parties which by mistake was not properly reduced to writing.   Second, that the agreement of the agents of the defendant with the plaintiff was merely an agreement to cause insurance to be written, not an agreement to insure. Third, if there was an agreement by the agents to insure, it did not become binding on the defendant because the particular insurance company was not designated to write a straight fire policy.   Fourth, the only agent who represented the defendant in the transaction was the stenographer, who designated the company and wrote the use and occupancy policy. Fifth, that plaintiff was bound to ascertain what kind of a policy of insurance was delivered; and sixth, that defendant's loss of the right to reinsure prevents reformation.

It is conceded that there is no indication of fraud or overreaching on either side and that the evidence is practically uncontradicted.   Both the agent of the insurer and the insured intended that a policy of fire insurance should be issued. Both supposed that such a policy had been issued, and it was only through the error of the agent's clerk that the mistake occurred.   The trial court was certainly fully warranted in making the inferences which it did upon the uncontradicted testimony.   If nothing be taken into consideration except the language used by the parties in the course of the transaction, these inferences would not so clearly appear.   The ordinary method and course of dealing by which parties procure insurance upon their property is a matter of common knowledge, and the language and conduct of the parties must be interpreted in the light of the surrounding circumstances. While insurance in legal theory and in fact rests upon contract, in common practice it is dealt with more as if it were a commodity kept for sale.   This attitude of mind which obtains in the business world is due no doubt in large part to the standardization of insurance policies by legislative enactment and by long continued practice.   The customer speci-

fies the amount and kind of insurance he wishes to purchase, the representative of the insuring company undertakes to comply with the request. The terms of the contract are largely statutory. The details fall into certain categories. All parties to the transaction understand what is intended, and evidence relating to the transaction cannot therefore be tested by the rules that would apply to a negotiation respecting a fresh transaction, the details of which were to be worked out and agreed upon in the course of the negotiation and set forth in a writing between the parties.

Here, as the court found, the plaintiffs intended to purchase fire insurance. The defendant's agents intended to sell fire insurance. The failure to deliver a contract of fire insurance was due to a clerical mistake. Under such circumstances plaintiff is entitled to reformation. There was no misunderstanding on either side as to what was intended. A failure to specify fully the terms and conditions might in some instances result in misunderstanding and a mistake on one side and not on the other, but that is not the case here. It appears in this case that the policy was indorsed in the same manner that a policy of fire insurance would have been indorsed; that the rate indorsed on the policy, $1.12, was the rate for fire insurance, ninety per cent. co-insurance, and not the rate for use and occupancy, and everything on the exterior portion of the policy placed there by the insurer led the insured to believe that the kind of insurance policy which he had requested the insurance agent to issue had been issued and delivered to him.

The doctrine of *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, has no application to a case such as this. There the agent had sought to sell one kind of insurance, the insured had sought to purchase another; there had been considerable negotiations between the parties, and when the policy was delivered the insured made no effort to ascertain what kind of a policy was in fact

delivered although the nature of the policy was plainly indicated. This case falls in the same class as *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 205 N. W. 800, and we need not repeat here what was said there.

As to the contention that the only agent who represented the defendant in the transaction was the stenographer who made the mistake, we can only say that it is upon its face unsound. The stenographer was not employed by and did not represent the defendant. The stenographer was employed by and took her directions from the agent, Cohen. Cohen testified:

"Miss Hoegel [the stenographer] made out the policy at my direction. I ordered her to. She had the expiration card calling for $8,000 worth of fire insurance on the contents of the *Modern Grinder Manufacturing Company,* expired September 12, 1924. I told her to go ahead and issue the policy under those terms."

The stenographer was at best a mere scrivener operating under the express direction of her employer.

It is further contended that the insurer had a contract under and by virtue of which it might have, and it is claimed would have, reinsured a part of this risk had the mistake not been made and had it known that there was outstanding a policy of fire insurance in the sum of $8,000; that such reinsurance cannot now be effected, that the position of the insurer is changed, that the insurer cannot be placed *in statu quo,* and that therefore the claim of the plaintiff to right of reformation should be denied. There is no claim that the insured had any knowledge of this arrangement of the insurer or that under any given circumstances it is the custom or habit of the insurer to reinsure, or that he had any knowledge or information in regard to the matter of reinsurance whatever. While as a general rule reformation may be denied where parties cannot be placed *in statu quo* or great hardship or inequity will result, that rule does not apply to

the situation disclosed by the evidence in this case. If the subject matter of the contract be property and the property has been disposed of, improved, or otherwise dealt with so as to prevent restoration, reformation may be denied. The claim here is not that the insurer changed its position but that it failed to change it. The relationship of the parties at the time of the fire was exactly the same as it was at the time the contract was entered into. We are cited to no cases and we find none where it has been held that right of reformation has been defeated because one of the parties has failed to do something with respect to the subject matter of the contract—in this case the agreement to indemnify—which he otherwise would have done. In any event the insured had no knowledge of the practice followed by the defendant, was in no way responsible for the mistake made, and under the facts in this case the equities of the insured are clearly superior to those of the insurer. Even if it was its common practice to reinsure, the insurer was not bound to do so, and certainly after liability has attached it cannot claim the benefit of an option so as to defeat the rights of the other party to the transaction.

*By the Court.*—Judgment affirmed.