Martin, Respondent, vs. American Insurance Company, Appellant.

*January 8—February 5, 1929.*

216

For the appellant there was a brief by *Tenney, Reynolds & Davis* of Madison, and oral argument by *Edward J. Reynolds*.

For the respondent there was a brief by *Mason, Priestley & Hopkins* of Madison, and oral argument by *T. M. Priestley*.

The following opinion was filed February 5, 1929:

OWEN, J. When the policy of 1915 was issued, P. H. Conley was the defendant's agent at Darlington. He acted as the agent of the defendant in the renewal of the policies in 1918 and 1921. Prior to the issuance of the renewal policy in 1924, he had been succeeded as agent for the company at Darlington by H. J. Marcoe, through whom the policy of 1924 was issued. All of these policies were left with the agent issuing them. The policies of 1915, 1918, and 1921 were left with and continued in the possession of Mr. Conley. The policy issued in 1924 was left with and remained in the possession of Mr. Marcoe. This was the common practice at Darlington. Mr. Conley testified that eight out of ten people for whom he wrote policies left them with him. Mr. Conley never notified Mr. Martin that there would be any change in the policies that he wrote for him. He never intended to make any change in the policies other than in the amounts, as requested. He intended the policy written in 1921 to be a renewal of the policy written in 1918. When the policy of 1915 expired in 1918 Mr. Conley wrote Mrs. Martin asking if he could renew the policy, and she informed him that he could. At that time Mrs. Martin was ill, at Madison, but later she went to Mr. Conley's office and he showed her the policy. This policy contained a rider identical with that attached to the 1915 policy. When this policy expired in 1921 she was notified by Mr. Conley, and she told him to renew the policy. The policy issued in 1921 contained a different rider, but Mrs. Martin was never notified of the change in the terms of the rider. The policy remained in the possession of Mr. Conley, it was never seen by Mrs. Martin; it was delivered to Mr. Marcoe when he succeeded Mr. Conley as agent, and when the policy expired in

1924 Mr. Marcoe notified Mrs. Martin in writing of such expiration, and she wrote him, "You can renew this insurance as it is now."

In a very able argument and comprehensive brief appellant's attorneys strongly maintain that these facts do not justify reformation. The case is argued on the assumption that it is the reformation of an ordinary contract that is sought, and the distinction which this court has made between the reformation of an ordinary contract and a contract of insurance (*Modern Grinder M. Co. v. Globe & R. F. Ins. Co.* 192 Wis. 319, 212 N. W. 523; *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 205 N. W. 800) is ignored. Much reliance is placed upon *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, although in *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 147, 205 N. W. 800, that case is analyzed and its inapplicability to a case such as we have here pointed out. In the *Journal Co. Case* (p. 148) it is said:

"While it is a general rule that the ordinary contract should at least be read by the person seeking reformation, the weight of authority does not seem to require this with reference to insurance contracts. The reason is quite obvious. The assured has little or nothing to say concerning the form of the contract. In many instances this is prescribed by law. In common practice the assured informs the agent of his coverage necessities and leaves it entirely to the agent to provide therefor. The average individual accepts the policy tendered relying upon the assurance on the part of the insurer, express or implied, that the policy affords him the coverage desired. In many instances a reading of the policy would not be enlightening to the assured. It is couched in technical terms and often complicated and involved."

And in *Modern Grinder M. Co. v. Globe & R. F. Ins. Co.* 192 Wis. 319, 323, 212 N. W. 523, it is said:

"The ordinary method and course of dealing by which parties procure insurance upon their property is a matter of

common knowledge, and the language and conduct of the parties must be interpreted in the light of the surrounding circumstances. While insurance in legal theory and in fact rests upon contract, in common practice it is dealt with more as if it were a commodity kept for sale. This attitude of mind which obtains in the business world is due no doubt in large part to the standardization of insurance policies by legislative enactment and by long continued practice. The customer specifies the amount and kind of insurance he wishes to purchase, the representative of the insuring company undertakes to comply with the request. The terms of the contract are largely statutory. The details fall into certain categories. All parties to the transaction understand what is intended, and evidence relating to the transaction cannot therefore be tested by the rules that would apply to a negotiation respecting a fresh transaction, the details of which were to be worked out and agreed upon in the course of the negotiation and set forth in a writing between the parties."

Perhaps the principal argument made by appellant against reformation is that Mrs. Martin was negligent in not discovering the change in the form of the rider which appeared upon the policy issued in 1921. In view not only of the general custom referred to in the cases above cited, but in view of this special custom existing between Mr. Conley and his insurance clientele, which seemed to continue when Mr. Marcoe took over Mr. Conley's insurance business, it is quite clear that the failure of Mrs. Martin to discover that the policy of 1921 contained a rider of different import from that carried by the policy of 1918 should not deny her the right of reformation. When the policy of 1918 expired she was notified by Mr. Conley and she instructed him to renew the policy. Some discussion is indulged in the brief with reference to what this meant, and it is pointed out that it could not have meant an actual renewal of the policy because the original policy contained no provision for its renewal; neither could it have meant the issuance of another policy in terms identical with the policy of 1915 because the

standard policy law to which the new policy must conform had been changed and had set up different provisions, or similar provisions in different language. We think it is plain that neither of these eventualities was contemplated by the instructions to renew. What was meant by the directions to renew the policy, and the only understanding that could have been entertained by the agent from such directions, was that Mrs. Martin desired the same insurance, the same character of coverage, that had been afforded to her by the terms of the old policy. The policy of 1918 gave her practically the same coverage, the same insurance, that was accorded by the policy of 1915. But the policy of 1921 did not. That contained a rider which materially limited the length of time during which the premises might remain vacant or unoccupied. She was not notified of this change in the extent and character of her insurance, but under all the facts and circumstances she was justified in relying upon the belief that the same indemnity had been extended to her by the policy of 1921 that was accorded by the policy of 1915. Such also was the situation when the policy of 1924 was issued. Except that two policies were issued granting to her a less degree of insurance than she supposed she had, the case cannot be distinguished from *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 205 N. W. 800, where it was held that reformation should be granted upon the ground of a mutual mistake of the parties.

Mr. Conley testified with reference to the policy issued in 1921 : "I never intended to make any change in the Martin policies other than the amount, as they requested ; I intended the policy written in 1921 to be a renewal of the policy written in 1918." That was the understanding of both Mr. Conley and Mrs. Martin, and the policy of 1921 was clearly the result of a mutual mistake, and this mutual mistake was just as clearly carried into the policy of 1924. We have no doubt that the respondent is entitled to the reformation

granted by the judgment of the lower court if, as a matter of fact and law, the insurance company was not prohibited from granting the same coverage in the 1921 and 1924 policies that was extended by the 1915 and 1918 policies. This requires us to determine the exact nature and meaning of the 1915 rider. That rider provided, "Privilege is granted for temporary unoccupancy during absence of family or pending rental or change of tenants; to make ordinary alterations and repairs. . . ." It is contended by appellant that this rider does not permit temporary vacancy. It is contended that unoccupancy means simply the temporary absence of personal habitation, with the dwelling, however, entirely furnished, while vacancy means an empty building. This is the construction placed upon these words by the Uniform Standard Vacancy or Unoccupancy Permit Form No. 200 prescribed by the rate bureau, to which we shall hereafter refer. The permit attached to the 1915 policy, however, must mean something more than mere temporary unoccupancy, because it speaks of temporary unoccupancy pending rental or change of tenants. Now unoccupancy pending change of tenants must mean absolute vacancy. It means the status of the building after one tenant has moved out and before another tenant has moved in. Certainly the presence of furniture in the building at such times was not within the contemplation of the parties. So we construe the rider of 1915 as authorizing not only temporary unoccupancy but temporary vacancy without any limit as to time.

It is conceded that Standard Vacancy or Unoccupancy Permit Form No. 200, prescribed by the rating bureau, and on file with the commissioner of insurance, would have given the same vacancy or unoccupancy privileges accorded by the rider attached to the 1915 policy, but that under the rules and regulations of the rating bureau an extra premium, which the court found amounted in this case to fifty-four

cents for each three-year period, would have to be charged. It therefore appears that there was no legal bar to the granting of the same vacancy permit in 1921 and 1924 that was a part of the policy of 1915. The fact that it required an additional premium of fifty-four cents for each three-year period did not justify the issuance of a policy carrying a less degree of protection than was intended by both parties. Defendant should have attached to the policy the rider form No. 200 and charged the extra premium.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 24, 1929.