BARLY and wife, Respondents, vs. PUBLIC FIRE INSURANCE COMPANY, Appellant.

*December 11, 1930—January 13, 1931.*

For the appellant there was a brief by *Bottum, Hudnall, Lecher, McNamara & Michael,* and oral argument by *Suel O. Arnold* and *Harold W. Connell,* all of Milwaukee.

For the respondents there was a brief by *Joseph A. Barly in pro. per.,* attorney, and *McGovern, Curtis & Devos* of counsel, all of Milwaukee, and oral argument by *Mr. Barly.*

FRITZ, J.   The plaintiffs, Joseph A. Barly and Ceil Barly, were husband and wife, and purchased, as second hand, the automobile covered by the policy in suit.   Joseph A. Barly was engaged in the practice of law, and was also licensed to solicit some lines of insurance, which he placed through an agency conducted by W. H. Shapaker, who wrote policies for the defendant.   Viewed most favorably in support of the trial court's findings, the evidence may be considered to establish the following facts:   On June 21, 1928, Joseph A. Barly told Shapaker that he wanted the policy for himself and his wife; that nothing was said as to the actual cost of the automobile, but Barly said that the list price

was $5,250, and that the actual value was $3,500. The policy as written by Shapaker named Joseph A. Barly, only, as the insured, and stated that the automobile actually cost the insured $3,500. Plaintiffs had acquired the car in discharge of a $1,000 account for legal services and the payment of $1,200 in cash. The policy was delivered at Barly's office, either by Shapaker or by mail, and either Barly or his wife, who assisted him at his office, placed it in their files, without reading it or discovering the errors as to the omission of the name of Ceil Barly as one of the insured, and the insertion of $3,500 instead of $2,200 as the actual cost to the plaintiffs of the second-hand automobile, until after the automobile was stolen on October 13, 1929. The net premium, after deducting Barly's commission, was duly paid.

On October 31, 1929, the stolen automobile was found by Chicago police. On November 19, 1929, defendant, by letter, notified Barly that it could not consider the reported loss a theft under the policy and requested the return thereof, and stated that it would return the full premium paid. In that letter defendant also informed Barly that the automobile was in Chicago, and suggested that he communicate with a certain person in charge of an estate which claimed a financial interest in the automobile. On November 22, 1929, Barly mailed a proof of loss to defendant, in which he stated the value to be $3,000. On the same day the defendant wrote to Barly offering to assist and co-operate with him "in the way of getting this car back from our police department here in Chicago," and suggested that Barly write to that department that he was "holding them responsible for the return of this property" to him. The policy provided that—

". . . Whenever requested by this company the assured shall assist in the recovery of property insured hereunder

either by means of replevin proceedings or otherwise, in effecting settlement, securing evidence, obtaining the attendance of witnesses, and prosecuting suits to such an extent and in such a manner as is deemed desirable by this company, and this company shall reimburse the assured for any expense incurred at its request."

No request for such assistance, or that plaintiffs incur any expense for which the defendant would reimburse them, was made by the defendant prior to the commencement of this action. Five days subsequent thereto defendant's attorneys demanded such assistance, but still did not request the plaintiffs to incur any expense for which defendant would reimburse them. Plaintiffs took no steps to recover and never recovered the automobile.

So far as material to the questions considered on this appeal, the trial court found: That defendant agreed to issue a policy to the plaintiffs insuring them against loss in the amount of the actual value of the automobile; that at the time defendant so agreed plaintiffs represented that the actual cost of the automobile to them was $2,200; that pursuant to "said agreement" the policy was delivered, but "by mistake of said defendant" Joseph A. Barly was named as assured instead of both plaintiffs; and there was inserted in the policy, as one of the warranties by the insured, that the actual cost of the automobile to the insured was $3,500 instead of $2,200; that by mistake, inadvertence, and oversight of plaintiffs the policy was received by them without their discovering those mistakes until after the automobile was stolen; that the policy was made out by defendant in its form, and was received by plaintiffs in that form, by the mutual mistake of said parties; that on November 19, 1929, defendant denied all liability on the policy and has ever since refused to pay any sum to plaintiffs on account of the theft; and that plaintiffs have fully performed all the

terms and conditions of the policy to be performed by them, excepting as such performance has been waived by the defendant.

Defendant assigns as error the court's findings as to mutual mistake of the parties, and inadvertence and oversight of plaintiffs in discovering the mistake, and as to performance by plaintiffs of all terms and conditions of the policy. However, a review of the record discloses that the evidence fairly admits of the court's findings, with the exception that plaintiffs represented that the automobile actually cost them $2,200. On that subject it was undisputed that no statement was made by Barly as to the actual cost of the automobile to plaintiffs.

Upon the findings the trial court adjudged plaintiffs entitled to reformation of the policy by adding the name of Ceil Barly as one of the insured, and substituting the figures $2,200 for $3,500 in the warranty as to the actual cost of the automobile to the insured, and to the recovery of $3,000 on the policy as reformed.

Defendant contends that the court erred in allowing reformation of an insurance policy effected by an agent of the insurance company covering property owned by the agent. Although, by reason of prior transactions and relations between Shapaker and Joseph A. Barly, the latter had as broker solicited insurance which he placed through Shapaker in consideration of receiving a commission from him, those circumstances did not make Shapaker the agent of plaintiffs in issuing the policy in suit; and, as regards plaintiffs' application and contract for the policy and the subsequent receipt and filing thereof, Joseph A. Barly was not the agent of the defendant. We are unable to accept defendant's theory on that subject, and, in passing upon that question, consider plaintiffs' status under the policy and in relation to defendant to be the same as that of any other insured of

similar intelligence and experience. Although there is some conflict in the authorities,—

"Insurance policies like other written instruments have been the frequent subjects of reformation by the courts. While, as a general proposition, reasonable diligence is exacted of the suitor seeking reformation in acquiring a knowledge and understanding of the provisions of an ordinary contract, it is obvious that a complete knowledge and understanding thereof is not an inexorable requirement, else few contracts would be reformed. While it is a general rule that the ordinary contract should at least be read by the person seeking reformation, the weight of authority does not seem to require this with reference to insurance contracts." *Journal Co. v. General Acc., F. & L. A. Corp.* 188 Wis. 140, 148, 205 N. W. 800.

In *Palmer v. Hartford Fire Ins. Co.* 54 Conn. 488, 501, 9 Atl. 248, a number of cases are reviewed, with the conclusion that a policy of insurance may be reformed although the insured has held the policy until after a loss in silence and in ignorance—because of his omission to read or carelessness in reading—of the necessity for such reformation. In *Snell v. Atlantic F. & M. Ins. Co.* 98 U. S. 85, reformation was decreed by inserting the names of several joint owners as the insured in place of the name of but one owner. Likewise, in this state it has been held that the failure of an insured, by oversight or inadvertence, to examine his policy and discover an error therein because of mutual mistake, did not defeat his right to reformation. *Komula v. General Acc., F. & L. A. Corp.* 165 Wis. 520, 162 N. W. 919; *Journal Co. v. General Acc., F. & L. A. Corp., supra;* *Modern Grinder M. Co. v. Globe & R. F. Ins. Co.* 192 Wis. 319, 212 N. W. 523; *Martin v. American Ins. Co.* 198 Wis. 214, 223 N. W. 437. In those actions, as in the case at bar, *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, was cited as authority for denying ref-

ormation of an insurance policy when the complaining party could have discovered the error before a loss occurred if he had used ordinary care.

The *Bostwick Case* was not an action for reformation because of mutual mistake. On the contrary, it was an action for the recovery of the entire premiums paid on life insurance policies, the provisions of which, by reason of the fraudulent conduct of the insurer's agent, did not conform to his representations, but which the insured kept in their possession, without inspection, for a period of over four months, during all of which the insurance was in effect. For various reasons stated in the Wisconsin cases cited above, the doctrine of the *Bostwick Case* was not considered applicable in those actions for reformation and recovery on contracts of insurance which the insured did not rescind. Most of the reasons assigned in the *Komula Case* are particularly applicable in the case at bar, because in that case the plaintiff also sought reformation of error in the description of the insured. In the case at bar, as in the *Komula Case,* defendant sustained no injury and Joseph A. Barly received no benefit by reason of the mistakes in the policy or because it continued erroneous in form until the time of the theft. There was no other automobile of the same description of which Joseph A. Barly was the sole owner to which the policy could apply, and the insertion, by mutual mistake, of an erroneous, higher amount as the actual cost did not prejudicially affect the defendant. It does not appear that plaintiffs' failure to discover the error more promptly, in any way deceived or misled defendant, or resulted in defendant's assuming any obligation which it would have avoided or would not have assumed but for the occurrence of the mistakes. Consequently, plaintiffs are not estopped by reason of their failure to discover the errors prior to the occurrence of the theft, and, upon the facts found, they were entitled to reformation.

Defendant also contended that plaintiffs were not entitled to recover because they failed to assist defendant in the recovery of the automobile. We do not consider it necessary to determine whether there was a revival of the terms and conditions of the policy after the unequivocal repudiation of its obligations thereunder by the defendant when it requested the return thereof in its letter of November 19, 1929, and stated that it would repay the full premium to Joseph A. Barly. Defendant's letter of November 22, 1929, did not withdraw or retract its prior repudiation. Neither did it request the plaintiffs, or either of them, to assist the defendant in the recovery of the car, or to incur expense at defendant's request, for which plaintiffs would have been entitled to reimbursement. Defendant had made suggestions to Joseph A. Barly as to what he should do on his own accord, for his own benefit, and at his own expense. However, none of defendant's suggestions made prior to the commencement of this action can be construed as a request by defendant, under the policy, that the insured render assistance to defendant in performance of the insureds' obligations under the provisions of the policy, and to enable the defendant to recover the automobile for defendant's benefit or at its expense. When plaintiffs commenced this action defendant had not exercised its privilege, under the policy, to request the insured to render assistance to defendant and incur expense at its request, for the purpose of recovering the insured property for its benefit. The status which existed in consequence of defendant's election to repudiate its contract was such at the time of the commencement of this action that defendant had not become entitled to assistance by the insured. Even in the answer filed by the defendant it does not allege that it ever made any such request under or within the provisions of the policy, or that there was any failure on plaintiffs' part to comply with any condition of the policy.

On the basis of the status of affairs which existed at the time of the commencement of this action, the plaintiffs were entitled to recover the actual cash value, at the time of the theft, of the automobile covered by the policy, and which the court found to be $3,000.

*By the Court.*—Judgment affirmed.