# CONSOLIDATED LUMBER COMPANY v. MERCURY INSURANCE COMPANY AND OTHERS.[1]

June 30, 1933.

No. 29,409.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellant.

*Sullivan & Neumeier,* for respondent.

[1]Reported in 249 N. W. 578.

*WILSON, Chief Justice.*

Defendant Mercury Insurance Company appealed from an order denying its motion for a new trial.

The action is to reform and recover upon a fire insurance policy.

In June, 1931, plaintiff was under a contract furnishing the labor and material and constructing a building for Rude Kreisel upon land owned by him near Balsam Lake, Wisconsin, to be used for a night club. The work was to be completed by July 4, 1931.

Frank Steinmetz conducted a local insurance agency at Frederic, Wisconsin. He lived there and was a duly appointed agent of the appellant, as required by Wisconsin St. 1929, § 209.04. Mr. Steinmetz was also employed by plaintiff at a salary of $200 per month, working as a foreman and in charge of one crew of men in said construction work. Plaintiff procured from appellant, through Steinmetz, a builder's risk policy. This policy covered Kreisel with loss payable to plaintiff. By its terms it was to expire upon the owner's taking possession of the property, presumably as completed; at least Steinmetz so advised Mr. C. W. Morton, plaintiff's vice president, in charge of this construction work. The owner took possession on the morning of July 4, 1931, and plaintiff then had a balance unpaid for the labor and material used in the performance of a contract with Kreisel in the sum of $7,851, for which under the laws of Wisconsin it had an inchoate lien right. It had not then filed a statement of its lien but did file it on September 1, 1931. On the morning of July 3, 1931, Mr. Morton asked Mr. Steinmetz if he could write a fire policy on the building for $7,000. Steinmetz replied that he could but that he would prefer going to St. Paul, where the main office of the company was located, to see the appellant company about it. Mr. Morton said to him:

"I am going to have insurance by noon today, and if for any reason you can't place this insurance, I will get it from some other agent in either Balsam Lake, Webster, or Frederic, someone near by."

Steinmetz left with the intention of phoning Mr. Morton from St. Paul if he could not get the policy. He returned in the middle

of the afternoon and told Mr. Morton that he had perfected the insurance and procured a policy for $7,000 for fire and tornado. Mr. Morton testified:

"I asked just how he covered our interest, and he told me that he had written a regular policy in the name of Rude Kreisel and put in that a mortgage clause. I asked him if that was correct and right and would cover us, and he said it was suggested to him by the office to write it that way, and I says to him, 'All right, if that is the way to write it, that is fine,' and I would accept it as insurance."

Steinmetz transacted his business with appellant in getting the policy by dealing with Mr. Malcolm Innes, and Steinmetz testified as to his report to Mr. Morton as follows:

Q. "Did you have any information at that time that the Consolidated Lumber Company then had a mortgage on the property?
A. "I did not.
Q. "Did you tell Mr. Innes that the Consolidated Lumber Company then had a mortgage on the property?
A. "I did not. * * *
Q. "Did Innes tell you how he was going to take care of the Consolidated Lumber Company's interest in that property in the policy?
A. "Yes.
Q. "What did he say?
A. "He said he would make it out in the owner's name, Mr. Rude Kreisel, and attach a mortgage rider to protect the interest of the Consolidated Lumber Company. * * * Upon my return to Balsam Lake Mr. Morton said, 'I see you got back. Did you take care of the insurance?' I told him, 'Yes,' that a policy had been placed that would protect him, and he asked me how it was taken care of. I told him it was written in the name of Mr. Rude Kreisel with a mortgage rider attached to protect the Consolidated Lumber Company. He said, 'You know that we haven't a mortgage as yet.' I replied that I told them that but they said the mortgage rider was

the proper form. He said, 'That's fine, I am glad that is taken care of, and if that is the way to do it, all right.'"

The policy here involved was delivered on August 8, 1931, the premium of $131.60 having been paid on August 3, 1931. The building was totally destroyed by fire on August 24, 1931.

Mr. Steinmetz knew plaintiff's interest in the building was that of a building contractor, having a large amount of money due for labor and material furnished. He did not know the amount. He knew that plaintiff did not have a mortgage on the property, but he also knew that plaintiff expected to have a mortgage thereon at some time in the future. He testified that he never informed appellant that plaintiff had a mortgage, but that he told Mr. Innes that plaintiff was to have a mortgage. Appellant knew the character of plaintiff's interest by reason of its builder's risk policy.

Mr. Malcolm Innes testified that as nearly as he could recall Steinmetz told him that plaintiff had a mortgage for about $3,000. The policy as written was made in terms to insure Kreisel, with loss, if any, payable to plaintiff as mortgagee, etc., using the usual union mortgage clause.

On July 21, 1931, Kreisel, who up until then held a contract for deed on the premises, received a deed from his vendor, Lillian Barre, and gave to her a mortgage for $4,750. He then conveyed the premises to Paradise Park Corporation. None of these conveyances were known to plaintiff or appellant.

Steinmetz had no duty or authority as an employe of plaintiff to procure any insurance for plaintiff, and in the transaction hereinafter referred to whereby plaintiff ordered and requested insurance upon plaintiff's interest in said building said Frank Steinmetz acted solely as the agent of the appellant and not as the agent of the plaintiff.

The court found from the facts, circumstances, and understanding of the parties that the policy by mutual mistake did not truly represent their agreement and understanding, and reformed it so as to comply with the true facts and agreement as the parties had actually intended, and awarded plaintiff judgment for the full amount of $7,000 insurance with interest thereon.

The evidence supports all the findings of the trial court. This includes the finding that Steinmetz was acting solely as appellant's agent. This fact also finds support in Wisconsin St. 1929, § 209.05, and in the authorities: Brandup v. St. Paul F. & M. Ins. Co. 27 Minn. 393, 7 N. W. 735; Kausal v. Minnesota F. M. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. R. 776; Lamberton v. Connecticut F. Ins. Co. 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; Whitney v. National M. A. Assn. 57 Minn. 472, 59 N. W. 943; Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532; White v. Standard L. & A. Ins. Co. 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; Kelly v. Citizens M. F. Assn. 96 Minn. 477, 105 N. W. 675; Norman v. Kelso F. M. F. Ins. Co. 114 Minn. 49, 130 N. W. 13; Schmitt v. U. S. F. & G. Co. 169 Minn. 106, 210 N. W. 846; Enge v. John Hancock M. L. Ins. Co. 183 Minn. 117, 236 N. W. 207; Sundin v. County F. Ins. Co. 144 Minn. 100, 174 N. W. 729; Baughman v. Niagara F. Ins. Co. 163 Minn. 300, 204 N. W. 321; Mahoney v. Minnesota F. M. Ins. Co. 136 Minn. 34, 161 N. W. 217; Duffie v. Bankers L. Assn. 160 Iowa, 19, 139 N. W. 1087, 46 L.R.A.(N.S.) 25; Davis v. Highway Motor Underwriters, 120 Neb. 734, 235 N. W. 325; Thielbar Realties, Inc. v. National U. F. Ins. Co. 91 Mont. 525, 9 P. (2d) 469; Taluc v. Fall Creek F. M. F. Ins. Co. 203 Wis. 319, 234 N. W. 364.

The courts have rather zealously guarded the rights of the insured and have indulgently overlooked the careless way in which the ordinary person leaves his rights to the protection of the insurer, who cannot be unaware thereof. The practice is very common for the insured to leave the matter of his insurance very largely in the care and protection of the insurer, who usually better understands his requirements and the opportunities that are available. There is plenty of precedent to show that the courts have been liberal in the reformation of insurance contracts to carry out the intention of the parties, which by reason of a mutual mistake has not been correctly reduced to writing in the policy. Kelly v. Citizens M. F. Assn. 96 Minn. 477, 105 N. W. 675; 17 Minn. L. Rev. 567, 589; Vance, Handbook Law of Ins. (2 ed.) 215; 15 Minn. L. Rev. 596; Journal Co. v.

General A. F. & L. A. Corp. 188 Wis. 140, 205 N. W. 800; Martin v. American Ins. Co. 198 Wis. 214, 223 N. W. 437; Barly v. Public F. Ins. Co. 203 Wis. 338, 234 N. W. 361; Taluc v. Fall Creek F. M. F. Ins. Co. 203 Wis. 319, 234 N. W. 364; Spurr v. Home Ins. Co. 40 Minn. 424, 42 N. W. 206; Kelly v. Citizens M. F. Assn. 96 Minn. 477, 105 N. W. 675; Mahoney v. Minnesota F. M. Ins. Co. 136 Minn. 34, 161 N. W. 217; Haley v. Sharon Township M. F. Ins. Co. 147 Minn. 190, 179 N. W. 895; Mark v. Liverpool & L. & G. Ins. Co. 159 Minn. 315, 198 N. W. 1003, 38 A. L. R. 310; Page v. Rollingstone M. F. F. Ins. Co. 166 Minn. 74, 207 N. W. 24; Logue v. Duchene, 185 Minn. 337, 241 N. W. 51; Forney v. Farmers M. F. Ins. Co. 181 Minn. 8, 231 N. W. 401; Robinson v. Union Auto. Ins. Co. 112 Neb. 32, 198 N. W. 166; Davis v. Highway Motor Underwriters, 120 Neb. 734, 235 N. W. 325; Central Granaries Co. v. Nebraska L. M. Ins. Assn. 106 Neb. 80, 182 N. W. 582; Fremont Beverage Co. v. Maryland Ins. Co. 123 Neb. 192, 242 N. W. 422.

Affirmed.