### KEETLEY v. NORWICH UNION INDEMNITY CO.

Civ. No. 1391.

District Court, D. Minnesota, Third Division.

May 3, 1948.

236

Grannis & Grannis, of South St. Paul, Minn., for plaintiff.

Ernest E. Watson, of Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this action to have a contract of insurance issued by defendant company on January 6, 1946 declared in force and effect during the year thereafter. Incidental to said proceeding, plaintiff seeks equitable relief requiring defendant to reform said contract of insurance so as to include liability thereunder by reason of a collision between the insured automobile of plaintiff and an automobile owned and driven by one Howard D. Randall, said collision having occurred on December 20, 1946.

Defendant by its answer denied liability, alleging fraud, and that on or about December 9, 1946, said contract of insurance was surrendered and cancelled.

It appears from the evidence that plaintiff at the time the contract of insurance was entered into was a minor and claimed to be the owner of a 1942 Chevrolet Sedan.

Plaintiff applied for insurance with the defendant through its agent at Hastings, Minnesota. At the time plaintiff was impressed that by reason of the fact that he was a minor he was incapable of owning an automobile, and for that reason in the words of defendant's agent, the insurance "was in Eleanora's name because he [plaintiff] was not of age." Defendant's agent knew Eleanora Keetley was plaintiff's sister-in-law, and that plaintiff was a minor. An additional premium of $2.15 was paid by plaintiff to the defendant so as to permit the driving of the car by a person under twenty-five years of age, as required by defendant company's rule. Obviously, this was for the purpose of covering the plaintiff owner in his use and operation of the insured car.

In June, 1946, plaintiff sold said 1942 Chevrolet automobile and purchased a 1940 Chevrolet from his brother, Leroy Keetley. Upon plaintiff's application to defendant for transfer of said insurance to the 1940 Chevrolet, defendant complied therewith and transferred the insurance benefits to the second automobile, naming Leroy Keetley as the owner and insured. This was done as in the case of the first policy because plaintiff was not of legal age. Plaintiff was in possession of the second automobile and paid all expenses in connection therewith. The agent of the defendant was fully familiar with the facts above recited, and was acquainted with plaintiff, his brother Leroy, and with plaintiff's sister-in-law, Eleanora. At the time plaintiff purchased the second automobile from Leroy Keetley there was a chattel mortgage on it which ultimately was paid for by a member of plaintiff's family.

In or about the fore part of December, 1946, plaintiff disposed of the second automobile. Up to this time Leroy Keetley had not executed a bill of sale or transferred the license to plaintiff, although he admits having sold the automobile to plaintiff and having been paid the purchase price therefor.

On December 9, 1946, plaintiff called at the office of defendant in Hastings and advised the agent that he "didn't think [he] would need the insurance policy any more, and she said, 'Well, it has pretty near run

out', and she said we should just leave it * * *." If the contract of insurance was cancelled plaintiff would have a refund coming to him covering the period from the surrender and cancellation of the policy of insurance to the date of its expiration on January 6, 1947.

Plaintiff next purchased a 1946 Oldsmobile, and on or about December 18, 1946, while driving said Oldsmobile, plaintiff collided with another vehicle, herein referred to as the Randall automobile, as a result of which both cars were damaged and the occupants of the Randall automobile sustained personal injuries, for which plaintiff was sued in the District Court of Washington County, Minnesota.

Plaintiff testified that on or about December 19th or 20th he called the defendant's office in Hastings and asked defendant's agent to transfer his policy of insurance to the Oldsmobile, which he had purchased. Plaintiff claims he reported the collision and resulting damage to defendant's agent at Hastings within two days following its occurrence, and requested a form to fill out a report, but that the agent refused to pemit him to do this; that thereupon he took the policy of insurance to her and asked her to change it so as to include coverage of the Oldsmobile, and that she refused to do this, saying that she could not transfer the coverage to "a heap of junk". The agent admits that some time subsequent to plaintiff's request to cancel she observed Leroy Keetley standing out in front of defendant's office and that she called him in and told him that since December 9, 1946, she had observed plaintiff driving an Oldsmobile, and in effect stated that under the circumstances she did not want to be responsible for anything that might happen. Plaintiff did bring his policy of insurance into her office on December 26th. Defendant kept the policy of insurance, and up to the time of trial had made no refund to plaintiff.

The record does not support defendant's claim of fraud. At most it may be said that plaintiff was grossly ignorant of his rights under the insurance contract in question. He thought the 1946 Oldsmobile was adequately covered against the risk later met with by him. In the meantime defendant did nothing to effectively cancel the policy it had issued to plaintiff, and for which he had paid defendant. Defendant knew that plaintiff was operating the Oldsmobile. It is obvious that the agent had accurate knowledge of the true situation arising out of her familiarity with the facts here controlling, and her failure to effectuate the cancellation. She did not offer or return the unearned premium to plaintiff. She, by action if not by word, encouraged the plaintiff to let the policy continue in force, saying there was very little of the premium left to be returned. The apprehension plaintiff labored under on account of his minority, leading to his naming his sister-in-law on one occasion and his brother on another as the insured, is clearly of no avail to defendant, under the existing circumstances. Logue v. Duchene, 185 Minn. 337, 241 N.W. 51.

The situation here is not unlike that of the insured in Preferred Accident Ins. Co. of New York v. Onali et al., D.C., 43 Supp. 227. There, at page 232, Judge Nordbye points out why the mantle of protection should be extended to the careless type of insured, saying:

"Undoubtedly, like most insureds, Onali relied upon the authorized agent's assurance that he was obtaining the protection afforded to insureds of this class. Legal niceties should not obscure the plain equities of the situation, and a reasonable interpretation of the admitted circumstances amply justifies a court of equity in granting relief by way of reformation. The Minnesota courts have consistently protected the rights of insureds where mutual mistakes have occurred in the issuance of an insurance contract. The following statement from Consolidated Lumber Co. v. Mercury Ins. Co., 189 Minn. 370, 374, 249 N.W. 578, 580, is illustrative:

"'The courts have rather zealously guarded the rights of the insured and have indulgently overlooked the careless way in which the ordinary person leaves his rights to the protection of the insurer who cannot be unaware thereof. The practice is very common for the insured to leave the matter of his insurance very largely in the care and protection of the insurer, who usually better understands his requirements and

the opportunities that are available. There is plenty of precedent to show that the courts have been liberal in the reformation of insurance contracts, to carry out the intention of the parties, which by reason of a mutual mistake has not been correctly reduced to writing in the policy.' " (Citing cases.)

The equities in the case at bar incline towards the plaintiff. If reformation is necessary it should be granted, for "equity delights to do justice, and that not by halves". 30 C.J.S., Equity, § 104. I have considered the points and authorities presented by able counsel for the defendant, but I am convinced the policy of insurance covering the accident here litigated was in effect and as issued by defendant was intended to cover plaintiff as the true owner.

Plaintiff may submit findings of fact and conclusions of law in accordance with the views above set forth.

An exception is allowed to defendant.