## Hargis v. Turner, Special Com'r.

(Decided June 3, 1938.)

A. H. HARGIS for appellant.
ERVINE TURNER and GRANNIS BACH for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On June 14, 1927, Jane Chalmers and her husband, Alf Chalmers, conveyed to the Hargis Bank & Trust Company, of Jackson, Kentucky, a certain tract or parcel of land in Jackson, which it appears was divided into two lots by a wire fence, on each of which there was a house. One of these two lots fronted on Kentucky Avenue, while access was afforded to the house on the back lot by a driveway leading over or across the front lot from the avenue to it.

On February 5, 1930, it is shown that the Hargis Bank & Trust Company closed its doors and was taken over for liquidation by the banking department of the state, when one Bryan Smith, now deceased, a deputy banking commissioner, was appointed receiver or liquidating agent for it and thereupon proceeded with the work of winding up the affairs of the bank until November, 1933, when the appellee, Ervine Turner, was appointed to succeed him and complete its liquidation.

It further appears that at the time the bank was taken over for liquidation, the appellant, Elbert Hargis, had on deposit with it the sum of $1,504.48, as shown by an audit of the bank's accounts made soon after its closing. Also it is likewise shown that one John M. Roberts then carried on deposit with it between $8,000 and $9,000, of which amount he assigned by check to the appellant, Elbert Hargis, $400, which was added to and credited upon the appellant's previous deposit account, making a total of $1,904.48. As to this, however, it is the claim of the appellant that Mr. Roberts did not by his check merely assign to him $400 of his deposit account, but that he, by his check given

him in such amount, assigned $400 to him payable out of whatever dividends the bank might thereafter pay upon his $8,000 or $9,000 deposit.

About August 15, 1935, this insolvent bank paid or declared a 7% dividend on the deposits and it was thought that it would pay out further dividends thereon amounting to a total of 25% or more upon its final liquidation. To accomplish such end, it also appears that the bank had taken over by foreclosure of mortgages a large amount of real estate, including the Chalmers lot or lots above mentioned, and that a number of the bank's depositors agreed to accept real estate for or upon their deposit dividends and had entered into agreements with the appellee, the liquidating agent, so providing.

Appellant, it is claimed, was among this number agreeing to thus receive their deposit dividends and it is claimed he signed one of these contracts, wherein he agreed to purchase the Chalmers property, or a part thereof, described as follows:

*"This is the house and lot nearest the street,* on Kentucky Avenue, known as the Jane Chalmers property."* (Italics ours.)

Further, this contract, claimed signed by him, contains these provisions:

"Now in consideration of the premises the depositor agrees to purchase of the seller the aforesaid property at the price of Five Hundred Dollars ($500.00), which said purchase price is to be paid and liquidated by applying thereon dividends on valid deposits in said bank owned by said depositor and which are free of incumbrances and not subject to offset or counter-claim of the Hargis Bank & Trust Company, or the seller, as its liquidating officer, or any other person.

"Provided, that the total of said dividends on final liquidation are not less than 25 cents for each dollar of valid, free and unincumbered deposits owned by said depositor."

Also it contains the further provisions that if such dividends declared upon final liquidation should not amount to as much as 25% of his deposit, the purchaser in such event could at his option either pay the balance of the agreed purchase price or cancel the contract.

The record further discloses that on or about August 23, 1935, and after the parties, the appellee claims, had entered into this contract providing for the appellant's purchase of the front one of the two Chalmers lots, a public sale of the bank's property was had, when the appellee contends that the appellant bid in the front one of these two Chalmers lots for $500 (as by the contract provided) and that another depositor, Lute Cobb Miller, purchased at the sale the other or back one of the Chalmers lots at the price of $300.

The evidence is further that after this sale, the attorney for the banking commissioner prepared deeds to the lots bid in by the several purchasers, which were forwarded to Frankfort, where they were executed by J. R. Dorman, State Banking Commissioner, and returned. It is claimed that, due to the inadvertence or oversight of the draftsman of the deed, caused by his not knowing the full details of the understanding had between the banking commissioner and the appellant as to the latter's purchase of the front one of these lots at a price of $500, there was conveyed to appellant by the deed both of the Chalmers lots, for the consideration therein recited of "Five Hundred Dollars ($500.00) evidence by second party's note of even date herewith and due and payable one day after date, which said note is secured by his deposit in the Hargis Bank & Trust company in the sum of $1900.00."

This provision of the deed it appears was erroneous, in respect to its reciting that the purchase price of $500 was evidenced by second party's note given in such principal amount, and as due and payable one day after date, as no such note was taken of the appellant in such amount or so payable, but that two notes of appellant for $187.50 each were taken. The remaining part of the purchase price of $125 was credited on the purchase price as representing, in part, the 7% dividend declared on appellant's deposit account then supposed to amount to $1,904.48, such being the aggregate amount of the appellant's personal $1,504.48 deposit and the $400 assigned him of the Roberts' deposit.

Further the evidence is that the appellee, special banking commissioner, becoming doubtful as to whether the description of the lot intended to be conveyed the appellant by the deed was correctly therein given, as confining the conveyance to only the front one of the

Chalmers lots, and, as a protection against making a mistaken conveyance to him of a greater or larger part of the property than was intended to be conveyed and had been agreed upon between them was to be purchased by appellant for the price of $500, and paid for out of the 25% dividends upon his clear deposits then expected to be declared, told Hargis that he thought there was a mistake in the boundary given in the deed, as drawn, and that if such should prove upon their further investigation to be the case, Hargis must reconvey him the back one of the Chalmers lots, which Hargis thereupon agreed to do.

Also, it is clearly shown that at the time of such conditional delivery of the deed to Hargis, he was of the opinion and believed that Hargis had on deposit with the bank $1,904.48, but afterwards discovered, upon investigation of the bank's records, that he was mistaken in his belief as to this, by reason of his finding that the appellant had, on April 20, 1933, given a check to the former deputy banking commissioner against his deposit of $1,504.48 in the amount of $1,502, to pay off his note which he owed it at the time it closed, with the result that when such check was charged against the appellant's account, there was left to his credit only the sum of $2.48, plus the $400 deposit assigned him by John Roberts.

Upon making these discoveries, that Hargis did not have $1,904.48 of valid deposits in the Hargis Bank free of incumbrances and not subject to offset and counterclaim by it, as was provided by their contract, supra, but had only $402.48 of such deposits, he demanded of Hargis that he reconvey the property deeded him by the bank or else otherwise pay to it the amount owing thereon over and above the 25% dividend due him upon his $402.48 unincumbered deposit.

Hargis refused to comply with either of these requests, whereupon the banking commissioner feeling that he had been duped and defrauded by Hargis, in procuring a deed to the property when he was under the mistaken belief that Hargis had valid deposits with the bank in an amount sufficient to pay with dividends declared thereon the agreed $500 for the lot, which Hargis knew he did not have, and when he also knew that he was getting a deed to all of the Chalmers lot instead of only the front part or lot thereof, instituted

this suit in the Breathitt circuit court, seeking a rectification of the mistakes made.

It was the contention and testimony of the appellant, Hargis, however, that the Chalmers lot bid in by him at the public sale at the price of $500 was the entire lot and that the deed, by which he was conveyed the lot, therein described it as the whole Chalmers lot. Also, he denied having made the agreement with the bank's liquidating agent (the appellee) prior to its public sale to buy the front one of these Chalmers lots or that he said he would go out and look over the Chalmers property and decide which of the two lots he would buy, or that he did so, or that he reported to the appellee that he was willing to buy one of the lots at the price of $500, or that at the later sale of the Chalmers property he bought only the one lot rather than the entire Chalmers property, containing the two lots.

He first stated that he did not remember signing the contract, as set out hereinabove, and then that he did not sign it. Also he testified that he did not know at the time of buying these lots that he did not have a deposit account with the bank clear of incumbrances or setoff in an amount of $1504.48, upon which he was entitled to receive payment of dividends in the amount of 25% thereof.

He contends that the condition of his deposit account was either known to the liquidating agent or could have been easily ascertained by him, by his proper reference to or inspection of the bank's records.

Upon this contradictory evidence and pleadings, the learned chancellor found and held that there had been deeded to Hargis by mistake the entire Chalmers lot, rather than only the front one of the Chalmers lots, by reason of the error of the draftsman of the deed, made in describing the lot thereby conveyed as embracing the entire Chalmers lot, and, further, that there had also been a mistake made by the parties in making the contract for the purchase of the front lot of the Chalmers property at a price of $500 payable out of dividends to be declared upon his deposit carried with the bank as consisting of $1,904.48, when, as a matter of fact, he was at such time entitled to receive dividends only upon the amount of $402.48, which was practically all assigned Hargis by Mr. Roberts out of his deposit carried with the bank.

Under such conditions, the chancellor held that inasmuch as Hargis refused to pay for the lot intended to be conveyed him, that the deed mistakenly made him should be canceled and, further, that the check given by Roberts to the appellant in the amount of $400 was only an assignment by Roberts to Hargis of such an amount of his deposit carried with the bank, upon which defendant was only entitled to receive dividends in the amount declared by the bank.

Hargis, complaining of this ruling, has appealed, contending both that he was entitled, under the deed executed him, to retain the Chalmers lot as conveyed him in its entirety and also was entitled to receive credit upon its purchase price for the entire amount of the $400 assigned him by check of Roberts, which he contends was payable out of such dividends as accrued and were payable to Roberts upon his $8,000 or $9,000 deposit.

Also he contends that as the liquidating agent of the bank agreed with him that the $500 owing by him for the Chalmers property, bid in at the sale by him, was to be paid out of the dividends upon the amount of $1,904.48, represented by the liquidating agent as the amount of his deposit carried with the closed bank and upon which he was entitled to receive dividends, it was entirely the mistake of the agent, unknown by him, Hargis, to be erroneous, and that as same occurred through the negligence of the agent, in failing to inform himself as to the correct amount of his deposit account, as he could have done by referring to the bank's records, which were available to him, the loss arising therefrom should be borne by the bank rather than charged to him.

The court of equity has here been applied to by the liquidating agent of the bank for restitution by appellant of the property, which appellant is attempting to retain without the payment of any consideration therefor. The chancellor, regarding the substance of the situation rather than the form, found that the appellant was retaining property bought of the bank for which he was paying no consideration, and that therefore, regardless of whether or not he had bought a part or all of the Chalmers property, he had acquired it under a mistake made by his vendor, and that justice de-

manded that it be restored to the vendor, which was effected by ordering the deed made thereto canceled.

It is unnecessary to go into a full discussion of the various arguments advanced by appellant in support of his right to retain this property, in that it is clear that it was conveyed appellant under the erroneous belief that he at the time had an unincumbered deposit account with the bank in the amount of $1904.48, upon which the expected dividends later to be declared thereon and paid would be more than ample to pay the agreed price of $500 therefor.

The appellant admits that he did not at the time of making this agreement have an unincumbered deposit account of $1,504.48 with the bank, by reason of his having been required to apply $1,502 thereof to the bank in payment of his note then held in such amount by the bank, leaving him a balance of only $2.48 thereof. Clearly the appellant, having but recently been required to give his check in such an amount to the bank to pay his note with it, could not have been ignorant of the fact that he did not have $1,504.48 thereafter left in his deposit account carried with it.

Clearly the situation thus presented was one wherein there was either a mutual mistake made by the parties or else a mistake made on the part of the appellee and fraud practiced on the part of the appellant in concealing the fact that he did not have the amount of deposit with the bank which the liquidating agent then thought he had, and upon which assumption he was acting.

It is the special province of a court of equity, in case of a clearly established mutual mistake made by the parties in dealing with each other, where loss results to the one by reason thereof, to afford relief by rescinding the transaction and restoring the parties to their positions of statu quo. While a court of equity can not make or alter a contract, it will relieve against mistake by granting the relief demanded by justice. Eastland v. Robinson, 233 Ky. 403, 25 S. W. (2d) 1028, 70 A. L. R. 365; Hemphill v. New York Life Ins. Co., 195 Ky. 783, 243 S. W. 1040.

It is our conclusion that without a doubt the chancellor's decree here found the justice of the case and embodied it therein.

No prejudice can be done the right of either of the litigants by restoring them to the positions in which they were before this transaction was had between them, under which unfair advantage has been gained by the appellant by reason of his having acquired property for which he has neither paid nor proposes to pay any consideration, and at the same time by its further provision leaving appellant to receive such dividends from the liquidating agent of the bank as have been declared and are owing him upon the $402.25 deposit which he has with the bank.

Judgment affirmed.